[No. 12583. In Bank. — March 29, 1889.]

## JOHN W. BRECKINRIDGE, APPELLANT, v. CHARLES CROCKER, RESPONDENT.

VENDOR AND PURCHASER — CONTRACT OF SALE — UNCERTAINTY OF TERMS — ACTION FOR DAMAGES — BURDEN OF PROOF. — To sustain an action for damages for breach of a contract of sale of real estate, the contract must be complete and certain in its terms, and the parties must have consented to the same subject-matter in the same sense; and the burden is upon the plaintiff to show that a contract, definite and certain in its terms, was entered into between the parties as a condition of obtaining any relief.

ID. — UNCERTAINTY AS TO PURCHASER — TELEGRAMS. — When a contract of sale of real estate is evidenced by three telegrams, — one from the agent of the owner of the property communicating a verbal offer, without naming the proposed purchaser; a second from the owner to his agent, telling

him to accept the offer; and a third from the agent, addressed to the proposed purchaser by name, simply notifying him of the contents of the telegram from the owner, but not otherwise indicating who the purchaser was, — the contract is too uncertain as to the purchaser to be enforced, or to sustain an action for damages for its breach. (BEATTY, C. J., and THORNTON, J., dissenting.)

ID. — UNCERTAINTY AS TO PROPERTY SOLD — NONSUIT. — In an action upon a contract to purchase the balance of a certain town property, when the evidence for plaintiff shows that there are two maps of the town property indicating it of different size, and that the purchaser intended to take the balance of the town property as shown by an unrecorded map, which indicated the town of greater size, and it appears that the town as thus indicated was of more than twice the value of the sum offered, and the evidence makes it probable that the vendor intended only to sell the town property as indicated by a smaller map, which alone had been recorded as the official map of the town, the proof of plaintiff indicates such a misunderstanding as to the subject-matter of the proposed purchase and sale, or at least shows that the contract was left so uncertain in this particular, that a nonsuit of the plaintiff is proper. (BEATTY, C. J., and THORNTON, J., dissenting.)

APPEAL from a judgment of the Superior Court of Merced County.

The facts are stated in the opinion.

*Charles J. Swift, D. M. Delmas,* and *J. K. Law,* for Appellant.

The note and memorandum of contract need not be addressed to the promisee. (Pomeroy on Specific Performance, sec. 84; Brown on Statute of Frauds, secs. 352, note, 354 a; 1 Wait's Actions and Damages, pp. 87, 88.) An acceptance turns an offer into a contract. (Anson on Contracts, p. 25.) The contract need only be signed by the party to be charged, or his authorized agent. (*Vassault* v. *Edwards,* 43 Cal. 458, 464; *Hall* v. *Center,* 40 Cal. 63; *Moss* v. *Atkinson,* 44 Cal. 3; Anson on Contracts, p. 59 e; Pomeroy on Specific Performance, secs. 75, 170; *Sanborn* v. *Flagler,* 9 Allen, 474.) The memorandum is sufficient if in the shape of a telegram signed by the party to be charged. (*Trevor* v. *Wood,* 36 N. Y. 807; 93 Am. Dec. 511; *Hazard* v. *Day,* 14 Allen, 487; 92 Am. Dec.

790.) The contract may be evidenced by several writings. (Pomeroy on Specific Performance, secs. 81, 82; *Murphy* v. *Helmrich*, 66 Cal. 69; *Lee* v. *Cherry*, 85 Tenn. 707.) The description need not be so complete as to dispense with resort to extrinsic aid to identify the property. (*Eggleson* v. *Wagner*, 46 Mich. 573; *Just* v. *Wise*, 42 Mich. 573; *Johnston* v. *Van Nelson*, 43 Mich. 208–218; Boone on Real Property, sec. 381; Pomeroy on Specific Performance, sec. 90; *Hollis* v. *Burgess*, 37 Kan. 487; *Mead* v. *Parker*, 115 Mass. 413; 20 Am. Rep. 110.) The contract is the exclusive medium of ascertaining the terms of the agreement, and Crocker could not show that he intended something different. (*Goldman* v. *Davis*, 23 Cal. 257; *Donahue* v. *McNulty*, 24 Cal. 411, 417; 85 Am. Dec. 78.) The vendee or promisee need not be distinctly ascertained to be such by the terms of the writing. (Boone on Real Property, secs. 374, 377; Pomeroy on Specific Performance, sec. 88; *Green* v. *Davis*, 4 Barn. & C. 235; *Brown* v. *Gilman*, 13 Mass. 158; *Webster* v. *Ela*, 5 N. H. 540; Hill on Vendors, p. 57; *Newell* v. *Radford*, L. R. 3 C. P. 52; *Dunning* v. *Roberts*, 35 Barb. 463; *Gates* v. *McKee*, 13 N. Y. 232; 64 Am. Dec. 545; *Eppich* v. *Clifford*, 6 Col. 493; *Ross* v. *Baker*, 72 Pa. St. 186; *Fulton* v. *Robinson*, 55 Tex. 401; *Clark* v. *Burnham*, 2 Story, 1; *Westenett* v. *Mattheson*, 1 Hoff. Ch. 39; *Fessenden* v. *Mussey*, 11 Cush. 127.)

*P. D. Wigginton,* and *L. D. McKissick,* for Respondent.

No contract existed, because no purchaser was named. (*Williams* v. *Lake*, 2 El. & E. 349; *Steel* v. *Fife*, 48 Iowa, 99; *Joseph* v. *Holt*, 37 Cal. 251, 254; *Co-operative Association* v. *Phillips*, 56 Cal. 540, 547, 551; *Sherburne* v. *Shaw*, 1 N. H. 157; 8 Am. Dec. 47; *Grafton* v. *Cummings*, 99 U. S. 106, 107.) No binding contract exists where a mistake accrues as to the subject-matter, or they do not assent to the same thing in the same sense. (Civ. Code, secs. 1689, 1691; *Dolan* v. *Scanlan*, 57 Cal. 262, 264;

*Ravegno* v. *Defferari,* 40 Cal. 462; *Barfield* v. *Price,* 40 Cal. 542; 1 Parsons on Contracts, 475, 476; Bishop on Contracts, sec. 313; *Crowe* v. *Lewin,* 95 N. Y. 423; *Hartford & N. H. R. R. Co.* v. *Jackson,* 24 Conn. 516, 517; 63 Am. Dec. 177; *Jenness* v. *Mt. Hope Iron Co.,* 53 Me. 21, 23; *Suydam* v. *Clark,* 2 Sand. 137.) If the contract is uncertain in one particular, the parties are not bound. (*National Bank* v. *Hull,* 101 U. S. 50; *Schenectady Stove Co.* v. *Holbrook,* 101 N. Y. 48.)

BELCHER, C. C.—This is an action to recover damages for the breach of an alleged contract to convey certain real property. In the court below a nonsuit was granted, and the appeal is from the judgment thereupon entered.

It appears from the record that in 1871 the Contract and Finance Company, a corporation, was the owner of a tract of land in Merced County containing several hundred acres. On this tract a town was laid out, called the town of Merced, and a lithographic map of the town was made, showing the land to be divided into blocks and lots. On the map, a red line was drawn around an oblong portion of the land, containing one hundred blocks, and of this one hundred blocks another map was made and recorded in the county recorder's office. The larger map was never recorded. Lots and blocks within the red line were sold from time to time, and on these lots has grown up the town of Merced. The land outside the red line has been used chiefly for farming purposes. In 1875, all of the property not then sold was conveyed to Charles Crocker, and he thereafter held the title for himself and as trustee for others. In 1883 the property was assessed to Crocker for $96,360. In due time he appeared, by H. B. Underhill, his agent, before the county board of equalization, and asked to have the assessment reduced to sixty-five thousand dollars. Underhill stated before the board that the property was not worth more than sixty-five thousand dollars, and that Crocker had

authorized him to offer it for sale at that sum to any one who desired to purchase it. This offer was heard by plaintiff, and after the adjournment of the board, he informed Underhill that he would take the property at that figure if he could have time to make the payment. Underhill replied that his orders were to sell for cash. After some discussion, plaintiff finally offered seventy thousand dollars for the property,—five thousand payable the next Tuesday, and the balance in thirty days. It was then agreed that Underhill should telegraph Crocker for instructions, and upon receipt thereof should communicate with plaintiff by telegraph. Underhill thereupon sent to Crocker at San Francisco the following telegram:—

"July 19, 1883.

"CHARLES CROCKER, San Francisco, Cal.: I am offered seventy thousand for balance of Merced town property,—five thousand on Tuesday next; balance in thirty days.

"This is according to your proposition. Telegraph me at Fresno your answer.        "H. B. UNDERHILL."

On the same day Crocker answered as follows:—

"SAN FRANCISCO, July 19th.

"To H. B. UNDERHILL: Accept the seventy thousand dollars offer for Merced property

"CHARLES CROCKER."

On the next day Underhill sent to plaintiff the following telegram:—

"FRESNO, July 20, 1883.

"J. W. BRECKINRIDGE: Mr. Crocker has telegraphed me as follows: Accept the seventy thousand dollars offered for the Merced town property.

"H. B. UNDERHILL."

On the Tuesday following plaintiff called at the office of Mr. Crocker in San Francisco, and he relates what there transpired, as follows: "I walked into the office and spoke to Mr. Crocker, and told him that I had come

down to make the first payment on this Merced property, and he replied: 'Go and see Judge Underhill about it. He is authorized to act for me in the matter'; and then I said, 'I suppose, Mr. Crocker, this is all a friendly business relation,—a business matter.' And he said: 'No, there has been a mistake,—Judge Underhill will explain it; he will act for me in this matter'; and he directed me to Judge Underhill."

Plaintiff then went away, but returned during the same afternoon with five thousand dollars in gold coin. When he returned, neither Mr. Crocker nor Judge Underhill was in the building, and plaintiff did not see either of them again that day. On the next day plaintiff went to Judge Underhill's office and told him he had come to make the first payment on the contract for the Merced town property, and he thereupon tendered to him five thousand dollars in gold coin, as and for such first payment.

Underhill replied that he could n't receive the money, and that he had been instructed by Mr. Crocker to decline any tender, on the grounds: 1. That there was no contract; and 2. That the tender was not made in time. All negotiations then ceased, and thereafter plaintiff brought this action, claiming that he had a contract for the sale of all the land owned by Crocker and represented on the larger map, and asked damages in the sum of two hundred thousand dollars.

The code provides that "no agreement for the sale of real property, or of any interest therein, is valid, unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent thereunto authorized in writing." (Civ. Code, sec. 1741; and see Code Civ. Proc., secs. 1971–1973.)

In order to take a contract for the sale of land out of the statute of frauds, it is not necessary that there be a formal contract, drawn up with technical exactness. A memorandum of the agreement is sufficient, and it may

be found in one or more papers, some or all of which may be telegrams. But the memorandum must contain all the material elements of the contract; that is, it must show who is the seller and who is the buyer, what the price is and when it is to be paid, and must so describe the land that it can be identified.

The law upon this subject is declared in *Grafton* v. *Cummings*, 99 U. S. 106, by Mr. Justice Miller, as follows: "In an agreement of sale, there can be no contract without both a vendor and vendee. There can be no purchaser without a seller. There must be a sufficient description of the thing sold, and of the price to be paid for it. It is therefore an essential element of a contract in writing that it shall contain within itself a description of the thing sold by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it."

If the seller refuses to perform his contract, the buyer has two remedies; he may bring an action for a specific performance of the contract, or for damages. In the latter case the rule as to the measure of damages is declared by the Civil Code as follows:—

"Sec. 3306. The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title, and preparing the necessary papers, with interest thereon; but adding, thereto, in case of bad faith, the difference between the price agreed to be paid, and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

But to whatever form of action resort may be had, the burden is upon the plaintiff to show by the writings that a contract, definite and certain in its terms, was entered into between the parties, and failing to do that, he must fail to obtain any relief.

In *Co-operative Association* v. *Phillips*, 56 Cal. 546, it is said: "A court of equity will not specifically enforce any contract, unless it be complete and certain. This rule applies as well to parties as to price, subject-matter, etc. Nor can the aid of a court of equity be had to specifically enforce that which is only the basis of an agreement, and not the agreement or contract itself."

In *Magee* v. *McManus*, 70 Cal. 556, it is said that "the thing agreed to be done must be definite and certain in its terms and in itself; and the party who claims performance must make out by clear and satisfactory proof the existence of the contract as he alleges it." (And see *Burnett* v. *Kullak*, 76 Cal. 535.)

In this case the only evidence of any contract between the parties is found in the three telegrams above quoted, and the question is, Do they show such a contract as can be enforced by the courts? The court below thought they did not, and in our opinion its conclusions in this respect were warranted, and must be sustained, for two reasons:—

1. It cannot be ascertained from the telegrams who the buyer was. There was an offer of seventy thousand dollars, but by whom was it made? The third telegram was sent to the plaintiff, but that fact comes far short of indicating with definiteness and certainty that he was the man. It might have been sent for the information of some one else. Looking at all the papers, the answer to the question can rest only in conjecture, and that is not sufficient.

2. "A contract is an agreement to do or not to do a certain thing" (Civ. Code, sec. 1549); and in order to constitute a valid contract, the minds of the contracting parties must meet and agree to the same thing.

"It is essential to the validity of a contract that the parties should have consented to the same subject-matter in the same sense. They must have contracted *ad idem*." (*Utley* v. *Donaldson*, 94 U. S. 48.)

"Where there is a misunderstanding as to the terms of a contract, neither party is liable in law or equity. Where a contract is a unit, and left uncertain in one particular, the whole will be regarded as only inchoate, because the parties have not been *ad idem*, and therefore neither is bound. A proposal to accept, or acceptance upon terms varying from those offered, is a rejection of the offer." (*National Bank* v. *Hall*, 101 U. S. 49.)

What was the subject-matter of the supposed contract here? The offer was for "balance of Merced town property," and the acceptance was of the "offer for Merced property." Mr. Crocker was in San Francisco, and had no knowledge of what had been said or done before the board of equalization at Merced. There were, therefore, no surrounding circumstances to be shown by parol. There were two maps of property at Merced. The large and unrecorded one was headed: "Town of Merced." The small one of a hundred blocks was headed: "Official Map, Town of Merced, Merced County, Cal." A witness, who had been county assessor since 1880, was called, and pointing to the blocks surrounded by a red line on the large map, said: "Those I understood to constitute the official recorded plat of the town of Merced." Another witness, who was the county recorder, looking at the same map, said: "The portion delineated by the red line is the recorded map of the town of Merced. The map within the red lines is the only map recorded,—the only map of record in my office."

It was also proved that at the time the offer was made, the value of the land owned by Mr. Crocker within the red lines was greater than the sum offered, and that the value of the land owned by him outside of the red lines was more than twice the sum offered.

Now, in view of all these facts, what did Mr. Crocker understand the words "balance of Merced town property" to mean? and what did he intend to sell? If he

understood the words to mean the balance of unsold property as shown by the recorded map, then it is clear that the minds of the parties never met, for the plaintiff claims that his offer and Mr. Crocker's acceptance was for the whole property as shown on the large map.

It looks to us as if there might have been, and probably was, a misunderstanding as to what was the subject-matter of the proposed purchase and sale. Certainly, the contract was left uncertain in this particular, and being so, must be regarded as only inchoate.

We therefore advise that the judgment be affirmed.

HAYNE, C., concurred.

FOOTE, C., took no part herein.

The COURT.— For the reasons given in the foregoing opinion, the judgment is affirmed.

BEATTY, C. J., dissenting.—I dissent. The three telegrams undoubtedly constitute a sufficient note or memorandum to satisfy the policy and letter of the statute of frauds, if, taken together, they contain the necessary elements of a contract of sale.

It is said that they do not designate the purchaser, or define the subject-matter of the sale. But I think there is abundant authority for holding that the communication of Crocker's acceptance of the seventy-thousand-dollar offer to Breckinridge is sufficient to designate him as the purchaser; and as to the subject-matter, that is clearly defined to be the balance of the Merced town property, —i. e., Crocker's remaining interest in the town of Merced.

Whether there was any well-known and clearly defined tract of land answering to those terms of description was a question depending—as in all such cases it must more or less depend—on evidence aliunde.

The evidence introduced on the part of the plaintiff

in this case certainly tended to show that there was a well-defined tract of land known as the town of Merced. It is true that there was some testimony tending to show that the name was applied to two different surveys, a smaller one, and a larger one including the smaller. But this was not ground for a nonsuit, which is proper only where there is a total failure of proof on some material issue.

The most that can be said is, that there was a conflict of testimony as to whether "Town of Merced" was the name of one or two well-defined tracts of land. If the case had been tried by a jury instead of the court, it will scarcely be contended that under such circumstances a nonsuit would have been proper. It may be urged, however, that the decision of the whole matter resting with the court, the order sustaining the motion for nonsuit was the same thing in substance as a finding against the plaintiff upon one or more material issues, and that there is evidence to sustain such finding on the point under discussion. But the trouble with this position is that there are no findings, and we cannot know that the decision of the superior court was or would have been against the plaintiff on this point. We are asked to sustain, upon conflicting evidence, a finding that has not been made, and must be implied. To do so is, in my opinion, to initate a practice fraught with all the mischiefs which the statutory requirement of specific findings was designed to prevent.

I think the judgment should be reversed, and cause, remanded for a new trial.

THORNTON, J., concurred in above opinion of BEATTY, C. J.

Rehearing denied.