[Civ. No. 2883.   Second Appellate District, Division Two.—May 2, 1919.]

## HIBERNIAN PETROLEUM COMPANY (a Corporation), Appellant, v. J. F. DAVIES, Respondent.

[1] CONTRACTS—RECITALS IN CHECKS—ACCEPTANCE AND INDORSEMENT BY PAYEE—MEMORANDUM IN WRITING—STATUTE OF FRAUDS.—The acceptance of checks, with the recitals therein that they are from a given corporation and on account of the bonus on a lease of certain lands, and their indorsement by the payee, do not constitute the making of a memorandum in writing, signed by the party to be charged, sufficient to evidence a contract to execute a lease of the lands, within the statute of frauds.

[2] ID.—AGREEMENT TO MAKE LEASE—ACTION FOR BREACH—EVIDENCE—FINDINGS.—In this action by a corporation to recover a sum of money paid on a bonus for a lease of certain lands for oil and mineral purposes, and for the cost of improvements made on the land, on the ground that the defendant refused to execute the lease, the court was justified in its findings that the defendant at no time had contracted to execute a lease to plaintiff, and at no time was obligated so to do.

[3] ID.—PAYMENT OF OBLIGATION BY CORPORATION—CONTRACTUAL RELATIONS WITH THIRD PERSONS NOT AFFECTED.—Where the defendant in such action had agreed to execute a lease to a certain person who was a stockholder and the president\of the plaintiff corporation, and had executed a lease to such person, the fact that the corporation paid the bonus on such lease did not alter the contractual relation between the defendant and such third person.

APPEAL from a judgment of the Superior Court of Kern County.   J. W. Mahon, Judge.   Affirmed.

The facts are stated in the opinion of the court.

E. L. Foster and Chas. A. Barnhart for Appellant.

Geo. E. Whitaker and T. N. Harvey for Respondent.

SLOANE, J.—The complaint in this action alleges that the plaintiff is a corporation, and that in May, 1911, the defendant entered into a contract in writing with the plaintiff whereby he agreed that upon the payment to him of a bonus of ten thousand dollars he would execute and deliver to plaintiff a lease of certain land for oil and mineral purposes; that during the said month of May the plaintiff paid de-

fendant five thousand dollars of this bonus; and that on the thirtieth day of September, 1911, it tendered to the defendant the remaining five thousand dollars of the stipulated bonus, and demanded the execution and delivery of the lease; that defendant refused, and has ever since refused to make such lease; and that plaintiff, relying on the agreement with defendant, entered into possession of the lands in question and expended twenty thousand dollars thereon in improvements.

The action is brought to recover the five thousand dollars paid on the bonus, and the cost of the improvements made.

The case was tried on the issues made by the complaint and the denials of the answer, and the court found that it was not true that defendant entered into a contract with the plaintiff in writing, or at all, but that it was true that the defendant was paid by one H. E. Sinclair the sum of five thousand dollars on account of a bonus for a lease of the premises in question, which sum of five thousand dollars was the money of plaintiff, but that defendant was not aware that it was plaintiff's money. There are other collateral matters covered by the pleadings and findings, but the facts as stated cover the gist of the action.

Judgment was given for the defendant, and the appeal is taken by plaintiff on the judgment-roll, supported by a bill of exceptions, on the insufficiency of the evidence to support the findings of the court.

The only evidence introduced tending to show any privity of contract between the plaintiff and defendant was the checks by which the five thousand dollars bonus payment was made, and certain memoranda thereon written. There were two checks, one of date of May 15, 1911, for one thousand dollars, and one of May 31, 1911, for four thousand dollars. The first check or order was as follows: "Bakersfield, Cal., May 15th, 1911. Hibernian Petroleum Company, pay to the order of J. F. Davies, One Thousand Dollars ($1000.00). Approved: Harry E. Sinclair, President. Countersigned: Cecil H. Soltau, Sec'y. To Bank of Bakersfield, Bakersfield, Calif." This check contained the following memorandum, indorsed upon it at the time it was drawn, or at least before delivery to payee: "Hibernian Petroleum Company $1000, to J. F. Davies, Dr. Bakersfield, Cal., May 15th,—first installment of bonus on lease in Sunset Field, Northwest quar-

ter and West half of Northeast quarter of the Northeast quarter of Sec. 4, Township 11 North, Range 23 W., S. B. & M., sixty acres more or less." Also indorsement: "In full settlement of within account." Signed: "J. F. Davies"— and further indorsements not relevant to this case. The second check, for four thousand dollars, and indorsements thereon, was in the same form, excepting for the date and amount.

The evidence discloses that the only negotiations which were had with the defendant up to a period some time after the making and delivery of these checks, with regard to this mining property lease, were by one H. E. Sinclair. So far as disclosed, he appeared to the defendant to be acting for himself, though the defendant admitted on the trial that he understood that Sinclair was getting the lease to sell or negotiate. But up to the time of these payments nothing is shown to have occurred to give the defendant notice that anyone but Sinclair was immediately concerned in the transaction. The record discloses that the defendant was not himself the owner of this property, but was acting under an agreement whereby he was obtaining a lease from the owner to a larger tract, including the land in question, subject to a ten thousand dollar bonus on his part; and he proposed to turn over to Sinclair sixty acres of this land, as described in the pleadings, in consideration of Sinclair paying to him the bonus, which he, in turn, was to pay to the owner, and to execute to Sinclair a lease to the sixty acres. Sinclair, in his own name, accepted this proposition, and thereafter made the payments heretofore referred to by orders or checks on the plaintiff company, and a lease was executed to him on the first payment of one thousand dollars—with the knowledge on his part that the lease would not be effective until he had paid all of the stipulated bonus and a like amount had in turn been paid to the owner of the land. Sinclair was, at the time, a stockholder and the president of the plaintiff company, and, as we glean from the rather obscure evidence in the record, had been let in as a stockholder and made president of the company because of his undertaking to secure for the company valuable leases. It is probably true that he was acting as trustee for the corporation in negotiating and obtaining this lease; but the court finds that defendant had no notice or knowledge of this fact at the time the one

thousand dollars and four thousand dollars bonus payments were made. This finding is supported by the evidence, excepting as to such notice as was given by the checks themselves and the indorsements thereon.

The lease to Sinclair bears date May 12, 1911, and is acknowledged as of date May 16, 1911. The defendant testified that the lease was delivered to Sinclair on May 16, 1911. This was after defendant had received the first bonus check of one thousand dollars from Sinclair. He will be presumed, therefore, to have had at that time such notice of the connection of the plaintiff corporation with the transaction as this check and its contents imported.

[1] The principal question on this appeal arises on this point: Did the acceptance of these checks, with the recitals therein that they were from the Hibernian Petroleum Company, and on account of bonus on the lease that Sinclair had contracted for, and the fact that they were approved by Sinclair as president and countersigned by the secretary of the company, create any liability on the part of the defendant Davies to the plaintiff company?

Plaintiff's counsel contend that these checks, either or both of them, with defendant's indorsement and signature thereon, constitute a memorandum in writing, signed by the party to be charged, sufficient to evidence a contract to execute a lease to the plaintiff company of the lands in question, and within the statute of frauds. No justification in law is shown in support of such a conclusion. The memoranda indorsed on the checks does not indicate to whom the lease was to be executed, and it was not signed by the defendant, the party to be charged. His signature on the back of the check was an acknowledgment of receipt of the payments "in settlement of the account," referring, we must assume, to the installments on the bonus agreement he had entered into with H. E. Sinclair personally. The evidence justifies the conclusion that he accepted these checks as payment of the obligation of Sinclair, and in pursuance of his agreement to execute a lease to Sinclair; but there is nothing in the transaction to indicate that Sinclair, or the defendant, or the plaintiff company itself, understood as intended by this memorandum anything more than a direction of the payment of this money on account of the agreement previously made between Sinclair and the defendant. It is

true, as appellant sets forth in its brief, that defendant was notified by the contents of these checks that Sinclair and the secretary of the corporation had drawn them on the Hibernian Petroleum Company, and that they had no implied authority to use the corporation's funds for Sinclair's personal contracts; but he might properly assume, what doubtless is a fact, that the corporation was acquiring an interest in this lease through and in the name of Sinclair, as it legitimately could have done.

In pursuance of the agreement with Sinclair, and on the payment of the first one thousand dollars of the stipulated bonus, the defendant executed the lease in question to Sinclair. He was under no obligation to make the lease until the entire bonus of ten thousand dollars was paid; but, as he testifies, he made it at this time with notice to Sinclair that it would not be effective until the remaining payments were made, and defendant's obligations to the owner of the property, from whom he in turn was leasing, had thereby been met. Soon after the payment of four thousand dollars by the second check had been made, Sinclair seems to have severed his connection with the plaintiff corporation, which had, in the meantime, entered into the possession of the leased property, and apparently by virtue of this lease. In any event, the officers of the corporation came into the possession of this lease long before the alleged tender and demand on defendant. There is nothing to indicate that the improvements and development work made by plaintiff on this property were not under and in reliance on this lease. It is not until later, when the corporation had evidently become financially involved and had defaulted in the conditions contained in the lease agreement, and a surrender of the premises had been demanded by defendant, that steps were taken to assert an independent contractual relation with the defendant, and to demand the execution of a new lease directly to the plaintiff corporation. A written offer was made to pay to defendant the remaining five thousand dollars of the bonus, on condition of the execution of a lease directly to the corporation. This defendant refused to do, on the ground that he had already made the lease to Sinclair in pursuance of his contract. Previous to this time the lease had become effective by the performance by defendant of the conditions of his contract with the owner of the premises; the plaintiff com-

pany was in possession under it, and was doubtless entitled to all its benefits, both as against Sinclair and the defendant. There is no reason to doubt, under the facts disclosed by the record, that the plaintiff company authorized the payments made to the defendant out of the company's funds; that in taking the lease in his own name, whether with or without the company's consent, Sinclair was acting as plaintiff's agent, and held the lease in trust for its benefit; and no reason is shown, unless it was financial inability, why the plaintiff did not or could not have secured to itself all the benefits of this lease that it would have been entitled to had it been named therein as lessee, providing it had complied with the terms of the contract with defendant. [2] The court was justified in its findings that the defendant at no time had contracted to execute a lease to plaintiff, and was at no time obligated so to do.

The third finding of the trial court, to the effect that the defendant was unaware that the sum of five thousand dollars received by him from Sinclair was the money of plaintiff, is probably not justified by the evidence, in view of the fact that it was paid by checks drawn on the plaintiff company by its president and secretary. [3] But a finding in favor of plaintiff as to such knowledge would not alter the liability of the defendant. His contract was with Sinclair, and the fact that a third party was paying the obligation did not alter these contractual relations, so far as defendant was concerned. The finding, if erroneous, was without prejudice.

The same may be said as to other specifications as to unsupported findings. They were all collateral to the main issue of a contractual relation between the plaintiff company and the defendant, and in the absence of such relation are not material to the decision.

Judgment affirmed.

Finlayson, P. J., and Thomas, J., concurred.