[Civ. No. 3433.   Second Appellate District, Division One.—December 29, 1920.]

## LAVINA H. MILLER, Respondent, v. WALTER P. SHAW, Jr., et al., Appellants.

[1] DEEDS — DEFAULT BY GRANTEES — SUFFICIENCY OF FORFEITURE CLAUSE.—Where a deed by which real property is conveyed to another, in consideration of the latter's paying to the grantors a specified sum per month as long as said grantors, or either of them, should live, expressly provides that in case of default in the payment of said sum "then the title to said real property will revert to said parties of the first part . . . and it shall be lawful for the parties of the first part or survivor of said parties of the first part, to re-enter, and have, and enjoy the said real property as of their former estate, and to eject, oust and remove the party of the second part, his heirs, executors, administrators, and assigns therefrom," and again that in the event the condition to pay said sum per month "is not strictly performed as described, then the title to said property shall vest in the parties of the first part or their survivor, and all right, title and interest therein

of said second party, his heirs, successors or assigns, shall termi-
nate," and in addition expressly provides that time should be of
the essence of the agreement, the condition that in the event of de-
fault committed by the grantee, forfeiture of title should result,
is sufficiently expressed.

[2] ID.—AGREEMENT TO TRANSFER INTEREST IN REAL PROPERTY—AU-
THORITY OF ATTORNEYS TO MAKE — INSUFFICIENCY OF. — A letter
written by the surviving grantor under said deed to her attorneys,
after default in said monthly payments had been made, as follows:
"I will withdraw my consent given on Friday the 13th to Monday
the 17th and then do what you can for me, as I must have money
to live on, and if you cannot get what they already owe me take
what you can get so long as it does not below the $1500 which I
understand they have offered you," did not express an intent that
said attorneys were authorized to enter into a contract binding
upon her, engaging to transfer her interest in the property.

APPEAL from a judgment of the Superior Court of
Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles L. Chandler, Frank M. Bering and E. O. Leake
for Appellants.

James G. Owen and Henry M. Willis for Respondent.

JAMES, J.—This action was brought to quiet title in
the plaintiff to a certain parcel of real estate. Judgment
was entered agreeable to the prayer of the complaint. De-
fendants have appealed.

On the twenty-seventh day of February, 1912, plaintiff
and Jacob C. Miller, her husband, executed a deed convey-
ing the title to the property in controversy to Mervin
Miller. The deed was made upon the consideration that
the grantee should pay to the grantors the sum of seventy
dollars per month as long as the said grantors should live,
and to the survivor in the event one should die. Jacob C.
Miller did die, and the plaintiff during all of the times
herein mentioned was entitled to receive the seventy dollars
per month provided to be paid. [1] The condition sub-
sequent was definitely and expressly stated in the deed
that in the event of the nonpayment of the seventy dollars
and in the event such default should continue for a
period of fifteen days, "then the title to said real property

will revert to said parties of the first part, . . . and it shall be lawful for the parties of the first part or survivor of said parties of the first part, to re-enter, and have, and enjoy the said real property as of their ·former estate, and to eject, oust and remove the party of the second part, his heirs, executors, administrators, and assigns therefrom; and in event that said condition to pay said sum of seventy dollars per month as hereinbefore described, is not strictly performed as described, then the title to said property shall vest in the parties of the first part or their survivor, and all right, title and interest therein of said second party, his heirs, successors or assigns, shall terminate." In addition to the provisions quoted, it was expressly provided that time should be of the essence of the agreement. The condition that in the event of de-fault committed by the grantee, forfeiture of title should result, is sufficiently expressed. (*Firth* v. *Marovich,* 160 Cal., at p. 261, [Ann. Cas. 1912D, 1190, 116 Pac. 729]; *Fitzgerald* v. *County of Modoc,* 164 Cal. 493, [44 L. R. A. (N. S.) 1229, 129 Pac. 794].) Payments were made to the plaintiff up to and including the month of April, 1918. The defendants herein at that time claimed to have succeeded to whatever title the Millers had divested themselves of in the property. In the summer of the year last mentioned, plaintiff employed attorneys to look after the matter of collecting the amounts due, and negotiations were had to that end. But no payments were made and the default of the defendants continued; in fact, default had never been relieved up to the time of the commencement of this action, which was in the middle of February, 1919. Defendants in their answer asserted that an agreement had been entered into with the plaintiff whereby the plaintiff had agreed to accept fifteen hundred dollars in full settlement of her claim against them and in full settlement of her interest in the property, and that she had agreed to execute to them a deed conveying all such interest therein held by her. In the attempt to support this defense, they offered to show that plaintiff had authorized her attorneys to make a "compromise" settlement, and that an agreement was made with plaintiff's attorneys, and at the latter's direction the defendants had deposited fifteen hundred dollars with an abstract company. They

first offered in evidence a letter written by plaintiff to her counsel, which read as follows:

"December 14, 1918.

"I will withdraw my consent given on Friday the 13th to Monday the 17th and then do what you can for me, as I must have money to live on, and if you cannot get what they already owe me take what you can get so long as it does not below the $1500 which I understand they have offered you.

"MRS. LAVINA H. MILLER."

They offered to show that by oral conversation had between Mrs. Miller's attorney and defendant Leake, the agreement for the payment of fifteen hundred dollars had been arrived at; they offered also to show that instructions were given to a title company, and that the sum of fifteen hundred dollars had been paid (at what time is not shown by the offer) to the title company, and that certain expenses had been incurred by the defendants in connection therewith. The instructions and papers used in connection therewith show that instructions signed by defendant Leake had been left with the title company on January 17, 1919, but no money, and that on January 22d a person from whom defendants were intending to borrow the money on mortgage filed certain instructions, without the money, however, and by their exhibits in connection with the escrow offer it appeared that on the thirtieth day of January no money had yet been placed with the title company. It does not appear that any instructions were ever given to the title company for Mrs. Miller, either directly by herself or through her attorneys. The court sustained the objection to the letter on two grounds: First, that it amounted to a confidential communication between a client and attorney; second, that as it was claimed that authority was thereby given to dispose of an interest in real property, the writing was insufficient because it contained no mention of any real property. Objection was sustained to the other testimony and documentary evidence offered, on the ground that it was incompetent and immaterial, and particularly because it was not shown that anyone had acted with authority to bind the plaintiff thereby. It may be further stated that up to the time this action was brought, the plaintiff had not by suit sought to

enforce any claim against the defendants. She had left the matter of the collection of the money in the hands of her attorneys. At the end of the year 1918 there was approximately six hundred dollars due to plaintiff from the defendants on account of the seventy dollars payments which had accrued for each month subsequent to April, 1918. Defendants were not only in default under the condition of the deed under which they deraigned whatever title they had, but were allowing a new default to be committed each month by failing to make the payments so plainly provided to be made. In so far as the matter of the settlement of this account is concerned, there was nothing to ''compromise.'' The amounts were definite and ascertained; the whole sum was a debt, if the plaintiff so elected to treat it, due her from the defendants. Defendants made no offer to pay, except that it appears they did seek to secure plaintiff's interest in the property by paying therefor the sum of fifteen hundred dollars. Presumably that was to settle all matters between the parties. [2] However that may be, it is clear enough that some part of that money was to be considered as payment for the interest of plaintiff in the real estate, and before any agent would be authorized to make a contract binding upon the plaintiff, engaging to transfer such interest, it was necessary that there be a writing sufficiently expressing such intent. The letter written by plaintiff did not constitute such a writing. It contained no description of the real estate and no reference thereto from which it could be deduced as to what property was in the mind of the plaintiff, if any, at the time; and if we assume for the moment that the attorneys possessed authority to enter into a binding engagement with respect to the plaintiff's interest in the property, it does not appear that they did this. They made no written contract with the defendants such as is required. (*Breckinridge* v. *Crocker*, 78 Cal. 529, [21 Pac. 179]; *Craig* v. *Zelian*, 137 Cal. 105, [68 Pac. 853].) Neither was there any part performance of an oral agreement. If we still keep in mind the assumption that the attorneys possessed the requisite authority and that they did orally agree to accept fifteen hundred dollars in payment for plaintiff's interest in the real estate, and that, while not entering into a written agreement

with the defendants, the defendants attempted to make performance of their part of the obligation, it does not appear that there was such part performance as to take the case away from the operation of the statute of frauds. As we have suggested after viewing the offered "escrow instructions," it appears that, while such escrow was commenced on the 7th of January, no money had been placed therein up to the 30th of January, 1919. When such money was so placed does not appear, even in the offer to prove the same made by counsel. The offer was that the money had been so deposited, which statement was made at the time of the trial, which occurred in June, 1919. In the view we take of this case, any other judgment than that entered by the trial court would not have been justified. Whether the letter first referred to was objectionable as being a confidential communication between client and attorney, we need not decide. It was, as was the other offered evidence, clearly objectionable on the ground that no sufficient authorization was expressed or appeared to have been given by the plaintiff which would entitle her attorneys to make any contract which would bind her interest in the real estate to the defendants. While it is wholly aside from any material question in the case, in fairness to those attorneys, it may be added that they did not appear and claim that they ever had made the agreement which defendants insisted upon and which plaintiff by this action repudiated.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 24, 1921.

All the Justices concurred.