**SIMMONS v. BIRGE CO., Inc.**

No. 2880 O'C.

District Court, S. D. California,
Central Division.

Nov. 10, 1943.

630

Faries & McDowell, of Los Angeles, Cal., for plaintiff.

John L. Wheeler, of Los Angeles, Cal., for defendant.

J. F. T. O'CONNOR, District Judge.

This is an action to recover damages for breach of contract. The suit was originally commenced in the state courts, but was subsequently removed here and maintained pursuant to 28 U.S.C.A. § 41(1). Certain issues decisive of the plaintiff's case were submitted following a pre-trial hearing.

The plaintiff was the organizer and president of John B. Simmons, Inc., which is engaged in the business of selling wallpaper, and similar supplies in Los Angeles, California, and elsewhere along the Pacific Coast. John B. Simmons, Inc., is the successor to the assets and wallpaper division of the C. S. Smith Co., Inc., which had been in the wallpaper business for a period of ten years. Transfer from the Smith Company to the Simmons Company was completed on July 7, 1939. The Smith Company acted, prior to the assignment, as a wholesale distributor of wallpapers manufactured by a number of companies, among which The Birge Company was one. The Smith Company was indebted to these various wallpaper companies in the amount of approximately $25,000. Of this amount $6,138.45 represented the obligation to the Birge Company. As part of the purchase price of the assets of the Smith Company, the Simmons Com-

pany assumed this indebtedness. The defendant, The Birge Company, Inc., is a New York corporation engaged in the manufacture of various grades and types of wallpaper, and published a volume designated as the "Blue Book" which contained samples of a better grade of wallpaper. The record discloses that representatives of the Simmons and Birge companies were negotiating to consummate a contract wherein the Birge Company would appoint the Simmons Company as agent for the Blue Book line on the Pacific Coast during 1940, on the same terms the Smith Company had handled the wallpaper. Completion of this contract was to have been preliminary to the assumption of the indebtedness of Smith Company by Simmons, and, as the plaintiff contends, a condition to the assumption.

Letters and personal conferences comprised the only evidence of the transaction between Birge and Simmons, and in reliance thereon the plaintiff's assignor executed an assignment from the Smith Company and assumed its indebtedness. In confirmation of this arrangement the Simmons Company agreed to, and ultimately liquidated, eight trade acceptances in favor of Birge Company in the total amount of $5,900.51. All negotiations between Simmons and Birge Company heretofore adverted to, occurred during the early part of the year 1939. This action was commenced on September 23, 1942.

The following issues are submitted for determination:

1. Whether the letters which passed between the plaintiff's assignor and the Birge Company were sufficient compliance with the Statute of Frauds wherein a written note or memorandum is required of any contract not to be performed within the space of one year from the making thereof.

2. If written evidence of a memorandum is materially deficient, whether equitable estoppel is applicable to enforce the plaintiff's claim.

3. Whether or not the action is barred by the Statute of Limitations.

4. The capacity of a foreign corporation to assert the Statute of Limitations in its defense.

▮ The laws of the State of California govern the rights and liabilities of the parties. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Section 1624 of the California Civil Code provides: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: 1. An agreement that by its terms is not to be performed within a year from the making thereof; * * *." California Code of Civil Procedure, section 1973, expresses a similar procedural provision.

▮ Failing to comply with the provisions of the statute does not render a contract, otherwise valid, void, but merely unenforceable. 12 Cal.Jur. 921; 25 R.C.L. 691; O'Brien v. O'Brien, 197 Cal. 577, 241 P. 861; Healy v. Obear, 29 Cal.App. 696, 698, 157 P. 569, 570; Durbin v. Hillman, 50 Cal.App. 377, 195 P. 274; Turell v. Anderson, 16 Cal.App.2d 445, 60 P.2d 906; Rest. Contracts sec. 178, Calif. Annot. "It is settled law * * * that a correspondence through letters or telegrams, or both, if they show clearly what the contract was, is sufficient under the statute of frauds. * * * In Ryan v. United States, 136 U.S. 68, 10 S.Ct. 913 [34 L.Ed. 447], the court held that 'a complete contract, binding under the statute of frauds, may be gathered from letters, writings, and telegrams between the parties relating to its subject-matter, and so connected with each other that they may fairly be said to constitute one paper relating to the contract.'" Elbert v. Los Angeles Gas Co., 97 Cal. 244, 32 P. 9, 10; Kelley-Clarke Co. v. Leslie, 61 Cal.App. 559, 215 P. 699; Rest. Cont., sec. 207, and Calif. Annot., 37 C.J.S., Frauds, Statute of, p. 656, § 177. "* * * it is not necessary that there be a formal contract, drawn up with technical exactness. * * *" Breckinridge v. Crocker, 78 Cal. 529, 534, 21 P. 179, 181; Rest.Cont. sec. 208. If the negotiations between Simmons and Birge were intended as a contract, it would clearly be within sec. 1624 (1) of the Cal. Civil Code, supra. The letters purported to embody a contract entered into in 1939 to be performed during 1940. "An agreement that by its terms is not to be performed within a year from the making thereof." Restatement of the Law of Contracts, sec. 207, which is in accord with the laws of California, declares: "A memorandum, in order to make enforceable contract within the Statute, may be any document or writing, formal or informal, (Derrick v. C. W. R. Ford Co., 27 Cal.App. 456, 150 P. 396; Joseph v. Holt, 37 Cal. 250; 27 C.J. sec. 306, p. 256) signed by the

party to be charged or by his agent actually or apparently authorized thereunto, (Cal. Civ.Code Proc. sec. 1973a; Cal.Civ.Code sec. 1624a; Straus v. Eaton, 47 Cal.App. 538 [190 P. 1033]; Harper v. Goldschmidt, 156 Cal. 245 [104 P. 451], 28 L.R.A.,N.S., 689, 134 Am.St.Rep. 124) which states with reasonable certainty, (Sherwood v. Lowell, 34 Cal.App. 365 [167 P. 554]) (a) each party to the contract * * * as will serve to identify him; * * * (Matheron v. Ramina Corp., 49 Cal.App. 690 [194 P. 86]; Hibernian Petroleum Co. v. Davies, 41 Cal. App. 59 [181 P. 836]; Fritz v. Mills, 170 Cal. 449 [150 P. 375]; Breckinridge v. Crocker, 78 Cal. 529 [21 P. 179]) and (b) the * * * subject matter to which the contract relates, (Anderson v. Wilstrup, 34 Cal.App. 771 [168 P. 1150]; Baume v. Morse, 13 Cal.App. 456 [110 P. 350]; Craig v. Zelian, 137 Cal. 105 [69 P. 853]) and (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." Finn v. Goldstein, 201 Cal. 605, 258 P. 85; Enlow v. Irwin, 80 Cal.App. 98, 251 P. 658; Fritz v. Mills, 170 Cal. 449, 150 P. 375; Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88, 134 Am.St.Rep. 154. The letters alleged to contain the contract between the parties are signed by the party charged, viz.: The Birge Co., Inc. The parties to the agreement are identified with reasonable certainty. In its letter of June 14, 1939, addressed to C. S. Smith Co. Inc., The Birge Co. states: "We are given to understand that Mr. John B. Simmons of Los Angeles, California, proposes to organize a new corporation to take over your wallpaper division; * * * we are willing to accept the new corporation as our debtor, releasing you from liability. * * *"

■■ Letters to a third person are sufficient to constitute a memorandum. Menveg v. Fishbaugh, 123 Cal.App. 460, 11 P.2d 438; Dennison v. Hildt, 180 Okl. 399, 70 P.2d 56, 112 A.L.R. 490. While the John B. Simmons Company was not organized at the time this letter was written, Birge's letter of June 15, 1939, addressed to Mr. Simmons, stated: "We are willing to allow you to handle our Blue Book next season on the same basis as applied this year, provided your deal is fully consummated * * *."

In this letter and the letter of June 24, 1939, directed by Birge to Simmons, the subject matter with reference to which the parties intended to contract, viz.: the Blue Book, is sufficiently identified.

■■ Ascertaining the terms and conditions of all of the promises constituting the contract is the final determining factor in considering the applicability of the Statute of Frauds.

"To satisfy the statute of frauds a memorandum 'must contain the essential terms of the contract expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intentions of the parties.' Browne, Statute of Frauds (5th Ed.) § 371. In Breckinridge v. Crocker, 78 Cal. 529, 21 P. 179, the court said: 'The memorandum must contain all the material elements of the contract.' Again, in Craig v. Zelian, 137 Cal. 105, 69 P. 853, it is said: 'The statute of frauds was originally enacted "for the prevention of frauds and perjuries" and an agreement * * * is required to be in writing in order that this purpose may be accomplished. The whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence.'" Seymour v. Oelrichs, 156 Cal. 782, 787, 106 P. 88, 91, 134 Am.St.Rep. 154; 37 C.J.S., Frauds, Statute of, p. 666, § 181; Edgar Bros. Co. v. Schmeiser Mfg. Co., 33 Cal.App. 667, 166 P. 366; White v. Southern Kraft Corporation, 8 Cir., 132 F.2d 381.

The door must not be opened to possible fraud, perjury, or to honest but mistaken recollection of memory. That which makes for certainty in business transactions is to be encouraged to prevent injustice by loss of property rights. Without elaborating upon the contents of the letters relied upon by the plaintiff, this court has been unable to discover any specification of the terms and conditions of the purported contract wherein the amount to be paid is ascertainable, and the geographical limits, in which the plaintiff is to exercise the exclusive agency of the Blue Book. The letter of June 24, 1939, by The Birge Co. declares:

"Regarding the price schedule on which we are going to sell you next year, I told Mr. Thornton that if you will agree (and I understand you have already done so) to take on our Blue Book and distribute at least 400 to 500 copies of same; also if you go into our better line, and papers in our regular line, all of which will represent a volume at least comparable to that

formerly received by us from the C. S. Smith Company, we will then be willing to give you the same price schedule as we have given you this year and as has prevailed in the past.

"I have told Mr. Thornton that I would appreciate hearing from him just as soon as the deal is consummated."

The letter of June 24th was the last communication between the parties and was attached to the stipulation of facts submitted to the court for decision. This letter clearly indicates a very important condition, namely, requiring the John B. Simmons Company, if they went into the better line and papers in the regular line of the Birge Company, the Simmons Company would then agree to purchase and become obligated to receive and pay for a volume at least comparable to that formerly received by the Birge Company from the C. S. Smith Company. The letter further states: " * * * we will then be willing to give you the same price schedule as we have given you this year and as has prevailed in the past." The Birge Company then concludes by requesting an answer and there was no answer to this letter. The Simmons Company did not bind itself and did not agree to the condition set forth in the letter of June 24, 1939. It is clear in the opinion of the court, therefore, that there was no contract. Had an action been instituted by the Birge Company against the plaintiff, the plaintiff, if it desired, could have successfully interposed the defense that it did not agree to the condition cited.

■■■ Referring to "the same price schedule as was given in the past" is no criteria for determining the price from the writing itself. Engaging in the better line, though indefinite, appears to have been a condition of receiving the price schedule prevailing in the past. Asserting the maxim: "That is certain which can be made certain", Cal.Civ.Code sec. 3538, is no basis for precluding the operation of the statute, for such an argument could be advanced in every case in which the Statute of Frauds is alleged as a defense; namely, the introduction of parol evidence to clarify the terms of the agreement. The courts of California have shown little tendency to deviate from strict compliance with the statute in the absence of some applicable equitable doctrine. Seymour v. Oelrichs, supra; and cases cited therein. See also 37 C.J.S., Frauds, Statute of, p.

666, § 181. Therefore, the letters in evidence do not conform with the requirements of the Statute of Frauds.

Cal.Code of Civil Procedure, sec. 1962(3) provides: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or mission, be permitted to falsify it." The plaintiff has averred sufficient facts to create an estoppel against the defendant, but this distinction is recognized: The estoppel applicable here arises, not because of the defendant's conduct in misleading the plaintiff to delay commencement of the action, but in creating the cause of action itself. Therefore, unless the plaintiff has been diligent in asserting his claim, he is barred from maintaining this action. " * * * it is settled law that, in the absence of special circumstances, one is not guilty of laches in any shorter period of time than the period of the statute of limitations." First Nat. Bank v. Stansbury, 118 Cal.App. 80, 5 P.2d 13, 16.

■■■ In the absence of any special circumstances in this case, maintenance of the action centers upon the period prescribed by the Statute of Limitations. Equity follows the law. Barritt v. Barritt, 132 Cal. App. 538, 23 P.2d 54.

■■■ The period prescribed for the commencement of "an action upon any contract, obligation or liability founded upon an instrument in writing * * *" is four years. Cal. Code of Civil Procedure, sec. 337. "It is generally held, in states having statutes similar to our own, that under similar facts the action is covered by the period of limitation applicable to suits founded upon written instruments. * * * Reyburn v. Casey, 29 Mo. 129. 'The broad and comprehensive language of the statute evidently embraces all kinds of written instruments, without regard to their mere form or phraseology, which imply a promise or agreement to pay money, and is not restricted to such as have the requisites of promissory notes, or to such instruments as contain an express promise or agreement upon their face to pay. It is sufficient if the words import a promise or agreement, or that this can be inferred from the terms employed.' The theory of these cases was that the paper, in each instance, acknowledged the existence of facts necessarily and directly importing the obligation

which was made the basis of suit, and this was held to be sufficient. See, also, Sannickson v. Brown, 5 Cal. 57; Ashley v. Vischer, 24 Cal. 322, 85 Am.Dec. 65. None of the cases decided in this state, and cited above, will be found to conflict with this view. They all had to do with writings which did not, in and of themselves, express the obligation sued upon, or a state of facts from which such obligation necessarily and directly flowed. In each instance, the obligation could be established only by evidence of facts and occurrences outside of those appearing on the face of the instrument. A situation of this kind was in the mind of the court when it said, in Scrivner v. Woodward, 139 Cal. 314, 73 P. 863, that 'promises merely implied by law, and not supported by any express promise or stipulation in the written instrument, do not fall within the provision of section 337, relating to contracts in writing,' and that any language to the contrary in Ashley v. Vischer, supra, employed in discussing the second paper there involved, must be disregarded as in conflict with later decisions. We adhere to the declaration that promises 'merely implied by law' from a situation evidenced by a writing— i. e., quasi contracts—are not within the statutory provision under discussion. The promise must be one arising directly from the writing itself, and included in its terms. But in determining whether the obligation is 'supported by an express promise or stipulation in the written instrument,' we must regard, as included in the terms of the writing, all obligations and promises which its words necessarily import." O'Brien v. King, 174 Cal. 769, 773, 774, 164 P. 631, 632; Louvall v. Gridley, 70 Cal. 507, 11 P. 777; 16 Cal.Jur. 454, 455, sec. 59; Chipman v. Morrill, 20 Cal. 130, 136; Kirby v. Bank of America N. T. & S. Ass'n, 4 Cal. App.2d 370, 40 P.2d 943; Wilson v. Wallace, 113 Cal.App. 278, 298 P. 86.

A promise, express or implied, to directly pay the plaintiff is not manifest from the letters constituting the written instrument. The writings did not, in and of themselves, express the obligation sued upon, or state facts from which such obligation necessarily and directly flowed. In this instance "the obligation would be established only by evidence of facts and occurrences outside of those appearing on the face of the instrument." Therefore, the obligation would not be founded upon an instrument in writing within the contemplation of sec. 337, supra, but is governed by sec. 339, Code of Civil Procedure, whereby the plaintiff's action was barred after two years from the accrual of the cause of action. The plaintiff alleges in paragraph IV "that at all times mentioned herein the defendant was and is engaged in the business of manufacturing wallpaper and selling the same throughout the United States of America, including the State of California." This allegation was admitted in defendant's answer, paragraph IV. These allegations are material in determining the tenability of the plaintiff's contention that as a foreign corporation the defendant's failure to comply with sec. 405, California Civil Code, precluded it from advancing the defense of the Statute of Limitations. Significantly, the Ninth Circuit Court of Appeals, through Judge Garrecht, declared: "The statute merely provides that, 'No foreign corporation shall transact intrastate business in this State,' until it has filed articles of incorporation, designated an agent, and done other things which appellant alleges appellee failed to do. It does not prohibit such corporation from doing foreign business in the state. If the corporation transacts 'intrastate business in this State,' without complying with the statute it incurs certain penalties set forth in the law, but forfeiture of the right to plead the statute of limitations was not imposed. During all of the time mentioned in the second amended complaint, and since, the statutes of California have imposed no restriction upon the right of a foreign corporation, such as the appellee, to plead the statute of limitations in any action brought against it. * * * It could lawfully do this without complying with the requirements which the statute provides for corporations doing intrastate business. With respect to matters growing out of such business it has all the ordinary rights of litigants, including the right to rely upon the statute of limitations, that right not having been denied by law. 6-A Cal.Jur. § 957, pp. 1588, 1589, and § 958, p. 1592. * * * 'Non-residence' or lack of 'legal existence' in a state, based upon noncompliance with the statute applicable to foreign corporations doing intrastate business in the state, do not support the conclusion and are not equivalent to an allegation that the appellee was 'out of the State' within the meaning of the statute of limitations and do not obviate and nullify the admissions of the pleadings that at all times appellee was actually transacting business in the

State." Taylor v. Navigazione Libera Triestina, 95 F.2d 907, 910.

The benefits of a pre-trial hearing under Rule 16, New Rules of Federal Procedure, 28 U.S.C.A. following section 723c, is illustrated in this action. Counsel submitted at the pre-trial hearing the evidence referred to in this opinion for the purpose of determining the effect of a legal defense to the cause of action. This has been done. Prior to the adoption of Rule 16, the regular procedure would have been a trial at considerable cost to the parties and if a jury were demanded, considerable cost to the United States, all of which has been avoided. Should either party be dissatisfied with the court's ruling, the expense of appeal will be greatly minimized.

Judgment for the defendant.

Findings of fact and judgment will be prepared by the defendant, with costs.