[No. 14333.   Department Two. — September 1, 1891.]

## THE PACIFIC ROLLING MILL COMPANY ET AL., RESPONDENTS, *v.* THE RIVERSIDE AND ARLINGTON RAILWAY COMPANY, APPELLANT.

VENDOR AND PURCHASER — CORRESPONDENCE LOOKING TO FORMAL WRITTEN CONTRACT — UNCONCLUDED AGREEMENT — SPECIFIC PERFORMANCE. — A correspondence between a vendor and a proposed purchaser of a street-railway, from which it appears that neither party intended to be bound until a formal written contract expressing all the terms of the agreement should be executed by both parties, does not, in the absence of such formal written contract, prove such a concluded agreement as may be specifically enforced by a court of equity.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion.

*H. Goodcell, Jr.,* and *W. J. McIntyre,* for Appellant.

During the entire correspondence the minds of the parties never met or agreed upon anything as a completed contract, but they understood that the final result of their negotiations should be reduced to writing as a formal contract, and be signed.   There was, therefore,

no completed contract the specific performance of which could be enforced. ( *Wristen* v. *Bowles,* 82 Cal. 84; *Fuller* v. *Reed,* 38 Cal. 99, 108, 109; *Los Angeles I. & L. C. A.* v. *Phillips,* 56 Cal. 539.)

*Byron Waters,* and *Lyman Evans,* for Respondents.

The letters and telegram furnish the memoranda of a complete contract. That a more formal contract was intended to be executed will not excuse the defendant from keeping the contract disclosed by the memoranda. (Fry on Specific Performance, sec. 490, p. 249; Pomeroy on Specific Performance, secs. 81, 82, 84, 85, and cases cited in note 1 to sec. 63, particularly *Fowler* v. *Freeman,* 9 Ves. 391; *Karns* v. *Olney,* 80 Cal. 101.)

Vancliff, C.— Action to enforce specific performance of an alleged contract, by which the plaintiffs agreed to sell and the defendant to buy a certain street-railway situate in the city of Riverside, county of San Bernardino, and known as "Seventh Street and Grandview Railroad." Judgment for plaintiffs. Defendant appeals from the judgment, and from an order denying a new trial.

At the time the agreement is alleged to have been made, the plaintiffs did not have the legal title to the road they offered to sell, but held a certificate of purchase at a sheriff's sale, made under a decree enforcing a lien for the price of materials furnished to construct the road.

The only evidence of the agreement is a written correspondence between the parties by mail, the letters from plaintiffs being dated at San Francisco, and those from defendant at Riverside.

The appellant contends, among other things, that the correspondence does not prove a completed contract of sale.

The first letter of the correspondence is from defendant, dated October 22, 1888, as follows: "Will you sell

your Seventh Street road for five thousand dollars on six months' time, with interest at the rate of eight per cent per annum? Note of undeniable value."

In answer to this, plaintiffs wrote, November 15, 1888: "The Rolling Mill Company would sell the Seventh Street road for six thousand five hundred dollars, on the following terms, namely: Fifteen hundred dollars in cash, and the balance in six months at eight per cent interest, secured by good paper or mortgage on the other road."

*From Defendant to Plaintiffs, November 23, 1888.*

"We will pay you for the road and equipments as it stands, title, etc., to be subject to examination of our attorney, $5,750, one half in six months, and one half in one year, to bear interest at eight per cent per annum; said notes to be secured by a mortgage upon all of our lines, as well as upon the Seventh Street line."

*Plaintiffs to Defendant, November 27, 188–.*

"The price you offer is not enough. The time, terms, and security proposed will not be objected to if you will come to the price asked in former letter to you, to wit, $6,500. . . . . There is another party figuring on the purchase of this railroad, and we hold ourselves at liberty, notwithstanding this offer to you, to sell to the first one who comes to our price. I note that your offer was for the road and equipments. We don't own the rolling stock or motive power."

*Telegram from Defendant to Plaintiffs, November 30, 188–.*

"We will agree to your price and accept offer of 27th. Have written."

Letter of same date as telegram is as follows: "We will agree to your price, and accept your offer of the 27th. If you will send us the papers, we will have our attorney examine your title and prepare the notes and mortgage. Our offer is based on a clear title."

*Plaintiffs to Defendant, December 4, 188–.*

"*Dear Sir,* — Your telegram of 30th ult. was received,

and your letter of same date was received this A. M. We note that your 'offer' is based on a clear title. Our title comes through a sheriff's sale under execution and order or decree of court in the case of *V. S. Runnels & Sons et al.* v. *J. A. Studebecker et al.*, superior court of San Bernardino County. We have the sheriff's certificate, dated October 16, 1888. And six months after that date we or our assigns will be entitled to a deed, unless the property is in the mean time redeemed. If you are not satisfied to take our title as it now stands and close the matter, you must give us some assurance that you will take our complete title when we get it. I suppose that some of your people knew that we took title through the sheriff's sale in October last, and hence I concluded that you would only be assured of the regularity and effectiveness of the proceedings up to that time. Let me hear from you."

### *Defendants to Plaintiffs, December 8, 188-.*

"*Dear Sir*,—Yours of the 4th is at hand and contents noted, and in reply would say that we will be satisfied with a sheriff's deed. We are willing to close the matter up at the present time on the terms stated. If you will prepare a contract we will submit it to our attorney. The contract to state the facts, and when the six months from date of your purchase have expired, the notes and mortgages can be made. Notes dating from date of our contract and purchase. We understand the above to be your wish, and we are willing to make such a paper."

### *Plaintiffs to Defendant, December 13, 188-.*

" *Dear Sir*, — Inclosed find an agreement for your company to execute in regard to the purchase of the Seventh Street railway. Inasmuch as your company may change its board of directors before the six months expire, and inasmuch as the emergency may arise which would induce you to mortgage or sell your road before the six months expire, and this agreement gives us no

lien on any property, we request that you have Mr. Evans and J. G. North, and some other one of your stockholders, sign the guaranty attached to the agreement. You will note that the agreement says nothing about title. So you must make your investigations about title, if you wish, before signing the agreement. You can take a week to examine the title, if you wish. I suppose I have your correct corporate name. Upon signing the paper as requested and returning the same, the Rolling Mill and Lumber Company will execute and send you a duplicate."

*Defendant to Plaintiffs, December 22, 188-.*

" *Dear Sir,* — Yours of the 13th came duly, and the same was referred to our attorney. To-day we got his reply as inclosed. Can you give us any points that would set the matter at rest, and which could be submitted? We thought it was all right, and still hope you can make it clear to us."

The opinion of defendant's attorney, inclosed in this letter of December 22d, was to the effect that the sheriff's deed would not convey the franchise, for the reason that the franchise had been granted to an individual person solely, and not to his assigns.

*Plaintiffs to Defendant, December 27th.*

" *Dear Sir,* — Yours of the 22d at hand. I have been trying to find time to send your attorney a list of authorities and memoranda, etc., but am still busy. I think though, that I can remove your attorney's doubts. 1. Our supreme court has decided that a right of way to maintain and operate a street-railroad through the streets of a city is an easement and an interest in the land (*Appeal of N. B. & M. R. R. Co.*, 32 Cal. 506–512), and therefore subject to execution. 2. The Seventh Street railway was sold not only under execution, but under the decree and order of the court. (See the decree.) The sale would have been good under the decree

without execution.   3. The decree was made in a fore-closure suit of a mechanic's lien, in which the city of Riverside and Studebecker were parties, and therefore bound by the judgment, which decreed a sale of the franchise or right of way.   We deny that the ground of the rejection of the title is good.   But let us know what you finally conclude to do, without delay, so that we know where we stand.   You must be on or entirely off."

On January 14, 1889, the defendant wrote: " We decline to purchase the Seventh Street franchise."

It seems clear that the correspondence does not prove such a concluded contract as may be specifically enforced by a court of equity.   It does not appear that either party intended to be bound until a written contract expressing all the terms of the agreement should be executed.   ( *Wristen* v. *Bowles,* 82 Cal. 84; Pomeroy on Specific Performance, secs. 58, 63, and authorities there cited.)

It is contended, however, for respondents that all the terms of the contract were assented to, and the contract completed by defendant's letter of December 8th, in answer to that from plaintiffs of December 4th, in which plaintiffs say: "We note that your offer is based on a clear title. . . . . If you are not satisfied to take our title as it now stands and close the matter, you must give us *some assurance* that you will take our complete title when we get it."   In answer to this, defendant's letter of December 8th says: "We are willing to close the matter up at present on the terms stated.   If you will prepare a contract we will submit it to our attorney.   The contract to state the facts," etc.

Plaintiffs' letter (of December 13th) in reply to this shows that they did not understand that negotiations had terminated in a complete contract, and indicates that they knew defendant's ultimate decision depended upon whether or not it should be satisfied with the title derived through the sheriff's sale.   This letter contained

a draught of the agreement as then proposed by plaintiffs (which does not appear in the record), and says: "You will note that the agreement says nothing about title. So you must make your investigations about title, if you wish, *before signing the agreement.* You can take a week to examine the title, if you wish." Besides, this letter proposed, and the inclosed draught contained, a material new term of the agreement, viz., the personal guaranty of "Mr. Evans and J. G. North, and some other one of your stockholders." No such guaranty had been asked or offered before. Plaintiffs' letter of December 4th asked "*some assurance*" that defendant would take their complete title when they should get it, but no kind of assurance was specified; and the only kind of assurance mentio. ed was that of a mortgage on defendant's roads.

As contended by plaintiffs' counsel, it seems to have been understood that plaintiffs would undertake to convey only such title as they got by the sheriff's sale; but it was quite as well understood that if, upon examination, the defendant was not satisfied with that title it was not bound to purchase; otherwise plaintiffs' letters of December 13th and 27th are unaccountable. In the latter, plaintiffs undertook to answer the objections of defendant's attorney to their title, and close by saying: "We deny that the ground of the rejection of the title is good. But let us know what you finally conclude to do, without delay, so that we know where we stand. You must be on or entirely off." This seems inconsistent with the alleged understanding of plaintiffs at the date of this letter, that the agreement had been completed by defendant's letter of December 8th. If the agreement to purchase only such title as plaintiffs had derived through the sheriff's sale had been closed nineteen days before, why were plaintiffs concerned to vindicate that title? and why ask to be informed, without delay, what defendant finally concluded to do? and how could defendant be "entirely off"?

From a careful reading of the whole correspondence, I conclude, — 1. That plaintiffs proposed to sell only such title as they acquired through the sheriff's sale; 2. That it was not intended nor understood that the negotiations should be considered closed and the contract completed until, upon examination, the defendant should become satisfied with that title, nor until a formal written contract should be executed by both parties; and 3. As it appears that defendant was not satisfied with the title, and that no formal or final written contract was executed by the parties, the fourth finding of the court, to the effect that the agreement had been concluded, considered as matter of fact, is not justified by the evidence, and as matter of law, it is a misconstruction of the written correspondence.

In the process by which these conclusions have been reached, the question, discussed by counsel, as to whether or not the sheriff's deed would convey a perfect title has not been considered material, and this accords with the construction contended for by respondent's counsel; yet it may not be out of place to remark that it does not appears that the title was not rejected by defendant in good faith.

I think the judgment and order should be reversed, and the cause remanded for a new trial.

Fitzgerald, C., and Belcher, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.