[Civ. No. 3688. First Appellate District, Division Two.—April 21, 1921.]

## EVELYN L. DILLINGHAM et al., Respondents, v. A. L. DAHLGREN, Appellant.

[1] CONTRACT—SALE OF REAL PROPERTY—PRELIMINARY AGREEMENT—INTENTION OF PARTIES—COMPLETED CONTRACT—SUFFICIENCY OF EVIDENCE.—In this action for breach of an agreement to sell real property, the reference in the agreement to a contract to be completed taken in connection with plaintiff's testimony is held to indicate that the parties intended the execution of a new agreement with the preliminary agreement as a basis, and that the defendant never delivered to the plaintiff for her approval a proper written contract, but that he delivered a draft of a proposed contract containing important features in addition to those contained in the preliminary agreement.

[2] ID.—CONTRACT CONCERNING REAL ESTATE — ESSENTIALS — FUTURE ORAL AGREEMENT.—In a transaction involving a transfer of real estate, the parties cannot leave to future oral agreement any of the essential parts of their contract.

[3] ID.—PRELIMINARY AGREEMENT—STATUTE OF FRAUDS. — An action for breach of an agreement to sell real estate, which agreement contemplated the execution of a completed contract, not being one involving a lost instrument, does not come within the rule concerning secondary evidence, but is covered by section 1973 of the Code of Civil Procedure, which provides that in a case involving such an agreement, evidence cannot be received without the writing.

[4] CONTRACT—PRELIMINARY AGREEMENT—TERMS OF FINAL CONTRACT—FUTURE NEGOTIATIONS—INVALIDITY.—An agreement that parties will, in the future, make such contract as they may then agree upon amounts to nothing and cannot be made the basis of a cause of action; where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the inten-

tion of the parties, but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Reversed.

The facts are stated in the opinion of the court.

G. L. Aynesworth, L. N. Barber and A. W. Carlson for Appellant.

H. L. Meyers, Ray C. Wakefield and H. F. Briggs for Respondents.

LANGDON, P. J.—This is an appeal by the defendant from a judgment against him for $1,350 for the breach of an agreement to sell to the plaintiffs a certain piece of real property situated at Fresno, California.

Appellant contends that the complaint, evidence, and findings are insufficient to sustain the judgment because they do not show a binding agreement between the parties for the sale of this property. The contract sued upon is brief, and is as follows:

"A. L. Dahlgren agrees to sell to Evelyn L. Dillingham the following described property.

"Lots 7 and E ½ 8 Blk. 33 Belmont Add. for the sum of $3750.00 to be paid as follows: $100.00 deposit—$400.00 on completion of contract and $35.00 per month or more including interest at 7%.

"Seller agrees that he will paint woodwork in kitchen, varnish woodwork in dining and living rooms, also paint porch and steps. Seller agrees to pay for cement walk from house to street, buyer to pay for street work.

"A. L. DAHLGREN.
"EVELYN L. DILLINGHAM."

The case as made by the plaintiff contains two frailties— (1) concerning the applicability of the statute of frauds; (2) concerning the making of contracts in general. These two frailties happen to run arm in arm under the facts of this particular case, but are not necessarily dependent one on the other.

First, we shall take up the consideration of the case as to how it measures up when we consider the clause of the statute of frauds.

The trial court found: "That by the phrase 'on completion of contract' in said preliminary agreement (the document herein set out) the parties intended the execution of a more formal agreement in writing in accordance with the terms of said preliminary agreement." It is the contention of appellant that this finding is not sustained by the evidence and that it appears from the testimony of the plaintiff that it was not intended that the parties had completed their agreement; but that it was the intention of all parties to agree to enter into an agreement in the future embodying conditions which would be satisfactory to both parties. The testimony of the plaintiff certainly sustains this position. She testified as follows: "Q. At the time this little memorandum which has been introduced in evidence was signed, was there any conversation between you and Mr. Dahlgren that some formal agreement would be drawn up for the sale and purchase of the lands? A. Mr. Dahlgren was to go ahead and complete a form of contract. Q. Now was anything said about what would be in the terms of that contract? As a matter of fact, nothing was said as to what the terms of that contract would be, was there? A. No, only just there would be a mutual agreement. Q. And this little paper that has been introduced in evidence here, marked Plaintiff's Exhibit 2, was not intended to be an agreement at all but simply something to be signed until the formal agreement was drawn? A. Well, it was an agreement. Q. But it wasn't to be an agreement that you people should buy and sell property? A. It was an agreement from which a contract was to be made. Q. But you were not going to sign just any agreement Mr. Dahlgren drew up, were you? A. Any reasonable form of contract, yes. Q. But you don't answer my question. Please answer the question. You wouldn't have signed just any agreement Mr. Dahlgren would have drawn up, no matter what its terms were, would you? A. I don't believe I quite understand. Q. In other words, if Mr. Dahlgren had drawn up an agreement for the sale and purchase of that land with terms and provisions in it that you didn't like, you wouldn't have signed it, would you? A. No.

Q. In other words, whatever agreement he was to draw up would have to be one which you would agree to? A. I was perfectly willing to sign a regular form of contract. Q. Your idea was that any contract he drew up would have to be such as you would approve? Is that right? A. Yes, I think so. Q. In other words, if he had drawn a contract with terms which you thought were wrong or unfair to you, you would not have signed it. A. No. Q. And as to the matter of an agreement, neither you nor he had said anything about just what terms or provisions were to go into it, had you—hadn't been a word said about it? A. Not exactly, but Mr. Dahlgren handed me a contract which was perfectly all right with me and which I was willing to sign. Q. Was that before this little memorandum was signed? A. No, after. Q. That is the paper that was introduced in evidence? A. Yes, sir. Q. But, now, Mrs. Dillingham, answer my question—prior to the time that paper was drawn up and handed to you, you and he had had no discussion whatever as to the terms and conditions of the contract to be drawn. A. No. Q. And you didn't know what terms and provisions the contract he was to draw would have in it? A. No, certainly not, but—I was certainly under the impression it would be a regular form of contract that is always used in real estate sales. Q. Now, tell me what the regular form of contract in real estate sales contains. I want to say I have never seen one and I have been in the business for twelve years. A. I don't say I can explain exactly, but I think you have one in your hand. Q. No, I have not. I am sorry to say I have not. Now, Mrs. Dillingham, as a matter of fact there is no such thing as a regular form of contract, is there? A. Yes, in a way. Q. Well, you have never seen two contracts that were the same? A. Not exactly. Q. Now, as a matter of fact, you and Mr. Dahlgren didn't say a word about the drawing of a regular form of contract, did you? A. Well, no, but it was understood. Q. It was your intention whenever he submitted whatever form of contract he did submit to you that you should take it to your attorney for examination, wasn't it? A. Yes, sir. Q. And you did take it to your attorney for examination? A. Yes, sir. Q. And asked him if it was all right? A. Yes, sir. Q. And if he had not said it was all right, you

would not have signed it? A. No. Q. Now, then, as a matter of fact, did he furnish you a certificate of title? A. No, he did not. Q. There was nothing in the agreement about his furnishing you a certificate of title, in that little memorandum of agreement? A. No, sir. Q. Wasn't anything said in it about furnishing you that, and you would not have gone ahead with the agreement if he had not furnished you one? A. No, sir. Q. And he would have had to agree to put that in the contract before you would have gone ahead with the contract? A. Yes, sir . . . Q. As a matter of fact, as far as you and Mr. Dahlgren are concerned, nothing was ever said between you at all prior to the submission to you of this particular memorandum in evidence about the terms that would go into the contract, other than what happens to be in this little memorandum about the price and description of the property, terms of payment and things he would fix around the place and things you would fix and pay for, that was all that was discussed? A. Yes, sir. Q. And you left for future determination all the terms that should go into a completed contract, didn't you? A. Yes.''

[1] The foregoing testimony, taken in connection with the reference in the preliminary agreement to a contract to be completed, indicates clearly that the parties intended the execution of a new agreement, with the preliminary agreement as a basis, but containing many additional provisions to be determined by future negotiations. The evidence does not show that the defendant delivered to the plaintiff for her approval, a contract in writing which embodied substantially the terms of the preliminary agreement, together with the conditions that would have been implied by law, but that he delivered to her a draft of a proposed contract to which was added many important features in addition to those contained in the preliminary agreement.

[2] In the transactions between the plaintiff and defendant involving as they did a transfer of a piece of real estate, the parties could not leave to future oral agreement any of the essential parts of their contract. [3] The case does not involve a lost instrument, and, therefore, does not come within the rule concerning secondary evidence. (Code Civ. Proc., sec. 1855.) But the case is covered by Code of

Civil Procedure, section 1973, which provides that in a case involving such an agreement as is here claimed, evidence cannot be received without the writing. In *Swisher* v. *Conrad,* 76 Fla. 644, [80 South. 564, 565], the supreme court of Florida said: "The written memorandum for the sale of land required by the statute of frauds cannot rest partly in writing and partly in parol, but the written memorandum must disclose all the terms of the sale. (*Rhode* v. *Gallat,* 70 Fla. 536, [70 South. 471].)" In *Klein* v. *Markarian,* 175 Cal. 37, at page 40, [165 Pac. 3, 4], Mr. Justice Sloss, speaking of such a contract as this memorandum, says: "Furthermore, the contract fails to provide how the obligation to make the deferred payments is to be evidenced or secured. The option was signed by the defendant alone. He was to convey his land upon payment of less than one-fourth of the purchase price. Thereupon, he would have no writing signed by anyone evidencing an obligation to pay the balance, nor any security for such balance beyond the inadequate security of a vendor's lien. If this was the intent of the parties, specific performance might have been properly refused upon the ground that the contract was not 'just and reasonable' as to the defendant. (Civ. Code, sec. 3391; *Godwin* v. *Collins,* 3 Del. Ch. 196; *Diamond etc. Co.* v. *Todd,* 6 Del. Ch. 163, [14 Atl. 27].) If, on the other hand, the parties contemplated that the purchaser should give some form of secured evidence of indebtedness to cover the deferred payments—and this the plaintiff's own conduct shows to have been his view—the agreement was entirely uncertain with respect to the manner in which the balance should be evidenced and secured. (*Marsh* v. *Lott,* 8 Cal. App. 385, [97 Pac. 163].)"

In the case of *Los Angeles Immigration & L. Co-op. Assn.* v. *Phillips,* 56 Cal. 539, the court refused to enforce an agreement because it appeared that it was not really the final contract between the parties, but the basis on which to conclude a contract for the sale of land. In the case of *Wineburgh* v. *Gay,* 27 Cal. App. 603, [150 Pac. 1003], the memorandum which was the basis of the action, read as follows: "I will lease to you the stores now occupied by the Union Title & Trust Co., for 5 years, beginning Jan. 1, 1911, $250 for the first two years and $275.00 for the

following three years. Usual clauses in lease to rebuilding."
It was held that the last sentence in this memorandum was
uncertain and that it was not a completed agreement. In
this case the memorandum set forth was also a preliminary
agreement and the controversy arose over a failure to agree
upon the provisions to be included in the formal contract
between the parties. The court said, at page 605, of 27
Cal. App. [150 Pac. 1005] : " 'It is well settled that no
action will lie to enforce the performance of a contract,
or to recover damages for its breach, unless it be complete
and certain, and the rule applies as well to price as to sub-
ject matter and parties.' " (*Talmadge* v. *Arrowhead R.
Co.,* 101 Cal. 367, 371, [35 Pac. 1000].) "To satisfy the
statute of frauds a memorandum 'must contain the essential
terms of the contract expressed with such a degree of
certainty that it may be understood without recourse to
parol evidence to show the intention of the parties.' (5
Browne on Statute of Frauds, sec. 371.) In *Breckinridge*
v. *Crocker,* 78 Cal. 529, [21 Pac. 179], the court said:
'The memorandum must contain all the material ele-
ments of the contract.' (*Seymour* v. *Oelrichs,* 156 Cal.
782, 787, [134 Am. St. Rep. 154, 106 Pac. 88].)" In the
case of *Poel* v. *Brunswick,* 216 N. Y., at page 314, [110
N. E. 620], the court says: "In order to satisfy the re-
quirements of the statute of frauds, the written note or
memorandum must include all the terms of the completed
contract which the parties made. It is not sufficient that
the note or memorandum may express the terms of a
contract. It is essential that it shall completely evidence
the contract which the parties made. If, instead of proving
the existence of that contract, it establishes that *there
was in fact no contract* or evidenced a contract in terms and
conditions different from that which the parties entered
into, it fails to comply with the statute."

*Rutenberg* v. *Main,* 47 Cal. 213, involved a cash sale;
*Mann* v. *Higgins,* 83 Cal. 66, [23 Pac. 206], involved an
exchange *in praesenti; Easton* v. *Montgomery,* 90 Cal. 307,
[25 Am. St. Rep. 123, 27 Pac. 280], involved a contract
to sell on time, but the terms were stated in the memoran-
dum except such terms as the law implies; *Preble* v.
*Abraham,* 88 Cal. 245, [22 Am. St. Rep. 301, 26 Pac. 99],
involved a defective description which it was held could

be cured not by the introduction of the oral conversations, but by evidence showing ownership in the defendant of certain lands at the time of the contract, the location thereof, etc.; and as stated by Mr. Justice Lennon in *Proulx* v. *Sacramento Valley Land Co.*, 19 Cal. App. 529, at page 534, [126 Pac. 509, 511]: "In short, a description of land sought to be sold under a broker's contract can be cured, but not created, by parol evidence." What was said by the learned justice in reference to a defective recital as to description applies with equal force to every other recital which the law requires to be in writing.

We will now take up a consideration of the case under the rules governing the creation of contracts in general, and in this behalf we will for the moment turn our backs on the statute of frauds.

"It is essential to the validity of a contract that the parties should have consented to the same subject matter in the same sense. They must have contracted *ad idem.*" (*Breckinridge* v. *Crocker*, 78 Cal. 529, 536, [21 Pac. 179, 181].) In this connection one of the rules governing the creation of contracts in general is stated in 13 Corpus Juris 289, section 100, as follows: "The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement; nor is there a binding contract where, although its terms have been agreed on orally, the parties have also agreed that it shall not be binding until evidenced by writing." The same rule applies whether the preliminary negotiations were oral or in writing, if it manifestly appears that certain parts of the contract are later to be agreed upon and inserted in the formal draft. The writer has carefully selected all of the following cases as substantiating the foregoing proposition: *Fuller* v. *Reed*, 38 Cal. 99, 109; *Los Angeles Immigration & L. Co-op. Assn.* v. *Phillips*, 56 Cal. 539, 545; *Pacific Rolling Mill Co.* v. *Riverside & A. Ry. Co.*, 90 Cal. 627, 633, 634, [27 Pac. 525]; *Talmadge* v. *Arrowhead R. Co.*, 101 Cal. 367, 371, [35 Pac. 1000]; *Spinney* v. *Downing*, 108

Cal. 666, 668, [41 Pac. 797]; *Jules Levy & Bro.* v. *A. Mautz & Co.,* 16 Cal. App. 666, 670, [117 Pac. 936]; *Las Palmas etc. Distillery* v. *Garrett & Co.,* 167 Cal. 397, 400, [139 Pac. 1077]; *Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 461, 469, [168 Pac. 1037]; *Durst* v. *Jolly,* 35 Cal. App. 184, 190, [169 Pac. 449]. The rule is general in California whether the question arises in a case of specific performance (*Los Angeles Immigration & L. Co-op. Assn.* v. *Phillips, supra*); or an action to foreclose a mortgage (*Mercantile Trust Co.* v. *Sunset etc. Co., supra*); an action to quiet title (*Durst* v. *Jolly, supra*); or an action for damages (*Talmadge* v. *Arrowhead R. Co., supra*); *Jules Levy Bros.* v. *A. Mautz & Co., supra; Las Palmas etc. Distillery* v. *Garrett & Co., supra.*

[4] An agreement that parties will, in the future, make such contract as they may then agree upon amounts to nothing. An agreement to enter into negotiations and agree upon the terms of a contract, if they can, cannot be made the basis of a cause of action. Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. (*Shepard* v. *Carpenter,* 54 Minn. 153, [55 N. W. 906]. See, also, *Ridgway* v. *Wharton,* 6 H. L. Cas. 263, [10 Eng. Reprint, 1297].)

In the present case it not only appears that the agreement relied upon was silent as to many matters essential to a contract between the parties, but it further appears that it was not intended and did not purport to be a final contract between the parties, but only a preliminary agreement; that the parties intended further negotiations and mutual agreements as to numerous other matters involved in the transaction between them; that these matters when agreed upon were to be embodied in a final contract between the parties, but no agreement with reference to them was ever reached.

The judgment is reversed.

Nourse, J., and Sturtevant, J., concurred.