[Civ. No. 11717. Second Appellate District, Division Two.—May 12, 1938.]

STEPHEN B. DEXTER, Respondent, v. T. ANKIEWICZ, Appellant.

Schell & Delamer for Appellant.

James W. Bell for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court without a jury in an action to recover damages for breach of an alleged contract defendant appeals.

The pertinent facts are:

May 17, 1935, Edmund Ankiewicz died in Los Angeles County. The public administrator of Los Angeles County filed a petition for letters testamentary of the estate of Edmund Ankiewicz. In this petition it was alleged that the heirs at law of the decedent were unknown and that no last will and testament had been found.

Subsequently plaintiff, who was engaged in the business of searching for lost heirs caused an advertisement to be published in a newspaper in Poznan, Poland, with reference to the estate of decedent. In response to the aforementioned advertisement on November 5, 1935, defendant wrote to an agent of plaintiff in Connecticut stating that he was the brother, next of kin, and only heir at law of decedent. A copy of this letter he forwarded to plaintiff in Los Angeles, and in response plaintiff wrote defendant a letter reading:

"WE FIND THE LOST WHEN MANY OTHERS FAIL

STEPHEN B. DEXTER,
President and Manager
HEIRS RESEARCH AND RECOVERY BUREAU
316 Homer Laughlin Building
Los Angeles, California
November 23, 1935.

"Mr. T. Ankiewicz,

"Strezelecka 3a str.,

"Poznan,

"Poland

"Dear Sir:

"Our Connecticut agent, Mrs. Emma Greve, has forwarded to us your very interesting letter of the 5th inst., and we thank you for the same.

328

"We have read your communication with care, and it is possible that you are related to the particular Edmund Ankewich or Edmond Ankevich (Ankiewicz). The differences in spelling of the name can, of course, be easily accounted for since our American way of spelling family names often differs from those of the Europeans.

"It is most important that you protect your interests in the matter on the theory that he is your brother, and we are enclosing a form of Survey of Family Relationship which we will ask that you fill in to the best of your ability and sign and return to us. *We also enclose our contract, which when signed by you and returned to us will give us the power to represent you and protect your interests.* It is not necessary that you have this contract signed before a notary public, and all that is required is to have two witnesses sign on the lines provided for that purpose. This will save you the expense of a notary fee. You will note from our contract that you are put to no expense whatever. We take care of all that, and if we fail to make the recovery for you then we stand all the expenses incidental to the matter, and you are not responsible in any way whatever. In other words we have to make the recovery for you, before we receive our commission. In order to prevent delays, deal directly with us.

"We wish to state that we have been in the research and recovery business for a number of years, specializing in estate work, and are thoroughly competent to look after your interests. We have been uniformly successful, and can serve you faithfully and well. We are members of the Los Angeles Chamber of Commerce, and are licensed and bonded by the State of California. *Upon receipt of your Survey of Family and the Contract, we will immediately proceed to act in your behalf.* If there is any other information we desire from you, we will advise you later.

> "Very sincerely,
> " (Signed)
> "STEPHEN B. DEXTER

"SBD/

"READ THE INHERITANCE NEWS—PUBLISHED QUARTERLY—$1.00 a year.

"News Worth While.

"Your Chance Inquiry in Our Behalf May Mean Thousands in Money for You—Read 'Uncovering Millions in Wealth' "

The contract mentioned in the foregoing letter was a printed form and read:

"Heirs Research & Recovery Bureau,

(Stephen B. Dexter, Manager)

Dear Sirs:—

"I am in receipt of your offer to recover whatever portion may be due me from the Estate of Edmund Ankewich (Edmond Ankiewicz), and I hereby assign unto you one-third of such portion for your services in connection with this case, and I hereby authorize the Heirs Research and Recovery Bureau to Collect and protect my interest; and I give and grant unto your representative Stephen B. Dexter the right to act as my Attorney in fact in this specific Estate matter, and I hereby ratify all that he shall do in directing the distribution of any and all assets in connection with my portion of said Estate, it being understood and agreed that all expenses of whatever nature in connection with said recovery shall be advanced for me by the Heirs Research and Recovery Bureau and deducted at the time of distribution, and if distribution cannot be made, then the Bureau shall bear the loss of all moneys so advanced. The above assignment of one-third is to the Heirs Research and Recovery Bureau, or their assigns.

"Witness:
...........................................................
...........................................................
"Signature.................................................
"Address..................................................
...........................................................
"Subscribed and sworn to before me, this .... day of ........, 193..
...........................................................
"Notary Public in and for the County of ........ State of
....................
"Approved:—

HEIRS RESEARCH & RECOVERY BUREAU
By STEPHEN B. DEXTER Manager."

December 20, 1935, defendant wrote to plaintiff a letter reading in part:

"In reply to your letter of the 23rd, ult. *I let you kindly know, that I am willing to sign and return you the contract sent me by you,* and also to intrust you with the power to represent me and protect my interests, when you before will kindly give me some information, particularly of what will be composed the inheritance after my brother E. Ankewich and what value likely it represents in cash.

"I note, that I do not care for it, to reach, in what place the inheritance is, I will only know his value."

December 21, 1935, and before receipt of the letter just mentioned plaintiff cabled defendant as follows:

"*Forward agreement immediately* as other heir claimants."

After receipt of defendant's letter dated December 20, 1935, plaintiff on January 11, 1936, cabled defendant thus:

"Estate about sixty five hundred dollars proceeding to protect your interests authority your letter December 20 *forward contract immediately.* Heirs Research, Los Angeles."

The foregoing cable was followed by a letter from plaintiff to defendant dated January 18, 1936, reading in part as follows:

"*Referring to our previous correspondence, we are still awaiting the receipt of* the Survey of Family Relationship and *the Contract. In our letter, we impressed you with the importance of this on Nov. 23rd, and again in our cables of Dec. 21st and Jan. 11th.* While we have already proceeded to look after your interests, and took your letter of Dec. 20th as our authority for the same, as we mentioned in our last cable, *at the same time we need the other documents referred to above.*

"We have received letters from parties claiming that they represent you as attorneys, but you never mentioned them to us, and in the absence of such advices from you, we cannot recognize them in our relationship with you. The last letter is from an attorney by the name of Dr. J. Kaczmarczyk of Krynica, who states he holds Power of Attorney from you. We cannot understand this, as you had dealt with us, and given us the authority to act for you.

"You do not need any attorney there, as we are fully equipped to take care of your interests and to serve you

faithfully and well. We have been in business a number of years, and have an international reputation in our class of work. We are licensed and bonded and reliable, and you need have no hesitancy in entrusting this matter to us. *So we urge that you give this matter the attention it so well deserves, and send on the Contract and the Family Survey Form. It is most important that this has been done immediately.*"

In response to the foregoing letter on February 15, 1936, the defendant wrote plaintiff a letter reading thus:

"In answer to yours of the 18th ult. *I beg to return you herewith unsigned the forms you send me,* and to inform you that I was obliged to submit the question of my late brother's inheritance to the Polish Consulate General at Chicago through the Court of Justice of this town, giving them also full power of attorney since the 31 January last.

"I have given no other authorization or power whatever neither to lawyers nor to any other person and, if any steps have been taken in this matter, he has taken them has done so of his own initiative and at his own risks."

April 28, 1936, plaintiff again wrote to defendant a letter reading as follows:

"We are calling your attention to your letter of February 15, 1936, in which you returned the forms of deposition which had been forwarded to you and we note what you state to the effect that you were obliged to submit the question of your late brother's inheritance to the Polish Consulate General at Chicago, and giving your Power of Attorney to proceed in your behalf.

"You also stated that you have not authorized any attorney or any other person to take any steps in the matter.

"In connection with the above paragraph of this letter, we call your attention to your letter of December 20, 1935, in which you state your willingness to entrust us with the power to represent you and to protect your interests, provided we give you the information as to the value the estate represented. Following the receipt of this letter, we cabled you under date of January 11th giving you the amount of the estate and telling you we were proceeding to protect your interests as you had indicated in your letter you desired us to do.

"Thereupon, we acted in good faith, had your appearance made in the estate, secured the deposition which you were to give in proof of your heirship and in every way acted for your interest. Considerable time has elapsed since your letter of February 15th, hearings concerning the estate have come up on two occasions and no one connected with the Polish Consulate has appeared in your behalf. However, the attorney who is looking after your interest under the power given to us by your letter of December 20th, has appeared and has continued these hearings so that your interest might not be impaired. So Mr. Ankiewicz, it appears to us that your interests would be best served by giving us further instructions in your behalf so that you may be properly represented. We are, therefore, returning the deposition so that you may have it properly filled in and mailed back to us.

"Trusting that you will appreciate the situation and act promptly through us for your own protection, by further advice, we beg to remain."

Again on June 27, 1936, plaintiff wrote defendant a letter reading thus:

"I have been going over some of the letters in your case, and especially the letter where you authorize us to proceed if we could send to you a statement as to the amount of money involved.

"I have carefully inquired from the Court House records, but note that no one has appeared outside of our attorney, and now I am asking you again, since time is passing rapidly, to fill in the papers that were sent you for the purpose of proving your relationship to one Edmund Ankiewicz.

"I am sure, if you knew how important it was to finish this matter up, and if you knew as we know that delays in matters of this kind permit the passing of the estate to the State of California, you would appreciate the earnestness with which I write and urge upon you the necessity of filling in the papers that were sent you.

"*In filling in the papers, please be sure and sign the contract before two witnesses,* and fill in the questionnaire showing your relationship to the said Edmund Ankiewicz (Ankewich).

"Hoping to hear from you without delay, we remain,"

Finally on October 28, 1936, plaintiff wrote defendant this letter:

"We are writing in reference to the Estate of your brother, Mr. Edmund Ankewich, which is being probated in this County.

"You have doubtless been informed that we have filed a claim against this estate because of the understanding between us, and which you did not carry out according to the understanding and the contract, you having turned the matter over to other parties to represent you, after engaging our services, and after we had entered your claim to the estate of your brother and was representing you therein. We disliked to do this, but it was our only recourse under the circumstances, and we felt thoroughly justified in doing so.

"Of course, this means that the estate will be tied up for some time and till the matter is adjudicated in the Courts. If you care to settle the matter with us, instead of waiting an indefinite period, you can so indicate to us, and the matter can be disposed of at an early date.

"P. S. Our claim is the commission of one-third of the amount of the estate which would be coming to you."

■ This is the sole question necessary to be determined: *Does the foregoing correspondence constitute a binding contract between plaintiff and defendant?*

This question must be answered in the negative. Where the parties understand that before a contractual relationship shall exist the terms of their contract are to be reduced to writing and signed by them, a binding or completed contract does not arise until a writing evidencing the terms of their agreement has been executed by the respective parties. (*Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 461, 469 [168 Pac. 1037]; *Spinney* v. *Downing,* 108 Cal. 666, 668 [41 Pac. 797].)

■ In the instant case it is clear from the portions which we have italicized of the correspondence set forth above that both plaintiff and defendant contemplated that acceptance by defendant of plaintiff's offer should be signified by defendant's signing and returning the contract which accompanied plaintiff's letter to defendant dated November 23, 1935.

Therefore, applying the above-mentioned rule of law to these facts, it is evident that defendant did not accept plain-

tiff's offer in the manner contemplated by the parties, and hence defendant never entered into a binding or subsisting obligation with plaintiff.

In view of our conclusion, it is unnecessary for us to discuss the other points presented by counsel.

For the foregoing reasons the judgment is reversed.

Crail, P. J., and Wood, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1938.