[Civ. No. 2951. Fourth Dist. Mar. 5, 1942.]

W. M. PLUMMER, Appellant, v. E. O. EHLERS, Respondent.

R. J. Welch, Jr., and H. M. Dougherty for Appellant.

Sarau & Thompson and Roy W. Colegate for Respondent.

MARKS, J.—Plaintiff brought this action to quiet his title to land in the Palo Verde Irrigation District in Riverside County, California, and for ejectment. Defendant had judgment and this appeal followed.

No question is seriously argued under the cause of action for ejectment so we will confine ourselves to the questions presented in the action to quiet title against E. O. Ehlers. As the action was dismissed as to all other defendants, we will refer to E. O. Ehlers as the defendant. The pleading is in the usual form and alleges ''that the plaintiff now is and for five (5) years last past, together with his immediate pred-

ecessors in interest, has been the owner in fee and entitled to the possession of that certain lot and parcel of land. . . .''

Alfred Solano was the owner of the property in 1921. After five years' default in the payment of taxes, it was deeded to the state on August 16, 1927. On May 27, 1926, Solano conveyed the property to Charles L. Marble. On June 15, 1927, Charles L. Marble executed a quitclaim deed to the property to Solano. Solano, by quitclaim deed dated July 18, 1929, and recorded July 23, 1929, conveyed the property to Edward Galle. In 1931, the property was conveyed by deed to the Palo Verde Irrigation District after non-payment of assessments. By deed dated December 3, 1934, recorded on December 6, 1934, Solano quitclaimed the property to W. M. Plummer, the plaintiff in this action. On July 24, 1936, the State of California conveyed the property, which had been deeded to it because of delinquent taxes as distinguished from delinquent district assessments, to the Palo Verde Irrigation District.

On December 17, 1934, Solano commenced an action to quiet his title against Edward Galle and Myrta Blandford, also known as Myrta Blanford. The decree quieting his title was rendered and entered on May 13, 1935. This information is gained from an inspection of the original records in that action which were admitted in evidence by reference but were not copied into the record.

This completes the chain of title as shown by the record. The following facts are gathered from various documents offered in evidence but which were excluded on objections made by defendant.

The irrigation district assessments on more than ninety-eight per cent of the property in the district had become delinquent and a large proportion of the property had been deeded to the district. Taxes were also delinquent and much of the property had been deeded to the state. Default had been made on some of the bonds of the district and there had been a total default on all of the bonds since 1931. On August 18, 1932, the district entered into a certain contract of lease and option with Florence Clark, representing the owners of more than eighty-five per cent in amount of bonds outstanding, looking to some reorganization of the district. (Apparently Florence Clark subleased some considerable portions of the property.) On March 1, 1934, the Reconstruction Finance Corporation granted the district a loan of $1,039,423 with which to refund its bonded indebtedness.

In order to service this loan it became necessary to get the property in the district back into private ownership and on the assessment rolls. This the trustees of the district proposed to do under the provisions of an act approved June 5, 1933. (Stats. 1933, page 1961.)

In 1934 the trustees caused a plan for the rehabilitation of the district to be prepared. This plan provided for the sale at a fraction of the delinquent assessments and taxes of the various parcels "to the former owner or his assigns, when acquired by the District, the State and District tax title to all land which has been deeded to State and District for taxes now delinquent. The term 'former owner' means the owner at the time the land was deeded to the District and *prima facie* to the person to whom the land was assessed for district purposes at that time. The district may, on evidence of title submitted by an applicant to whom the land was not so assessed, determine that such applicant is the former owner or his assignee." Definite provisions were made for the protection of the right to purchase by the sub-lessees of Florence Clark, the lease and option to her being cancelled and the district agreeing to assume her obligations under her contracts. It was particularly provided that "as between a sub-lessee of Florence Clark who shall be found to have complied with the terms of his sublease and the former owner or his assigns, the District Board shall conclusively determine which shall be entitled to purchase, lease or option, as their respective interests may appear, after hearing as hereinbefore provided." This plan also contained the following: "If conflicting applications are made for the same land, the District Board shall, upon such notice and hearing, as it shall prescribe, determine which applicant is entitled to deed, contract, lease or option, and such determination, except in case of actual fraud, shall be conclusive on all applicants."

The rehabilitation plan was approved by the board of trustees of the district and was submitted to the Board of Supervisors of Riverside County. It was approved with certain amendments. We are not advised as to the details of these amendments. The amended plan was then approved by the board of trustees of the district, the Board of Supervisors of Imperial County and apparently by the necessary state officers.

On October 9, 1934, the board of trustees of the district ordered published in the Palo Verde Weekly Times, "an offer

to sell the tax title to certain lands within said District," including a copy of the rehabilitation plan. This notice was first published on November 1, 1934, and provided that applications to purchase must be made within sixty days from that date.

On December 19, 1934, plaintiff made a formal application to acquire the property here involved "under the provisions of the Rehabilitation Plan." On January 17, 1935, plaintiff made a deposit of the amount necessary to complete his application and received a receipt which contained the following: "This receipt is given subject to final acceptance of repurchase application by Board of Trustees."

On February 15, 1935, plaintiff was informed that his application had been rejected and his deposit was returned to him. Under date of March 11, 1935, plaintiff wrote the district asking for a rehearing on his application. He gave as his grounds that he had been informed that Solano had instituted suit to establish his title to the property and stating that "A determination of the Solano suit favorable to him would establish him as the former owner of the property within the purview of the repurchase plan, and me, therefore, as his assignee."

We are informed by counsel that a rehearing was had and that plaintiff's application was again rejected.

It is plaintiff's theory that the district made an offer of sale of the property to a class of which he was a member; that he unconditionally accepted the offer; that this acceptance created a binding contract of sale and purchase, giving him an equitable interest in the property which he could establish in this action.

In support of this argument he cites numerous decisions which support the rule for which he contends. We have no quarrel with the rule or the decisions supporting it. The facts before us do not bring the case within the rule and the reasoning of the decisions.

The offer of sale was not unconditionally made to a class including the plaintiff. It was conditionally made and required an acceptance which must be approved by the trustees before a binding contract of sale and purchase could be created. As there was no approval, but a rejection, there was no contract created and plaintiff acquired neither a legal nor an equitable interest in the property. (*Toms* v. *Hellman*, 115

Cal. App. 74 [1 Pac. (2d) 31]; *Dexter* v. *Ankiewicz*, 26 Cal. App. (2d) 326 [79 Pac. (2d) 400].)

Plaintiff was not one of the class to which the offer was made. The offer was made to the former owner or his assigns. Under the definition of ''former owner,'' contained in the Rehabilitation Plan from which we have quoted, Galle and not Solano was the ''former owner'' in 1931, when the district acquired the tax title because of delinquent district assessments. Therefore, plaintiff was not the assignee of the ''former owner,'' as defined in the Rehabilitation Plan, and had no right to purchase the property under the terms of the plan.

Because of the view we take of the case, it is unnecessary to consider the other questions argued by counsel.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.