[Civ. No. 14616.   Second Dist., Div. One.   Mar. 14, 1945.]

PRIMA M. O'DONNELL et al., Appellants, v. HENRY W. LUTTER et al., as Executors, etc., Respondents.

Allard & Whyte and James G. Whyte for Appellants.

Chas. R. Stead for Respondents.

WHITE, J.—Plaintiffs commenced this action to specifically enforce an alleged agreement to sell real property, which agreement was predicated upon certain letters which passed between plaintiffs and Henry J. Lutter during the latter's lifetime; or to recover damages for the breach of said agreement if, for any reason, specific performance could not be decreed. Named as defendants are the two executors of the last will and testament of Henry J. Lutter as well as the latter's eight heirs at law.

Only the executors appeared in the action and a general

demurrer was filed in their behalf. Following a hearing had upon said demurrer, the same was sustained by the court without leave to amend, and a judgment was entered by which the action was "dismissed and that the plaintiffs take nothing by reason thereof." From such judgment of dismissal plaintiffs prosecute this appeal.

By their complaint, plaintiffs alleged that between the 15th day of June, 1943, and the 12th day of August of the same year, through a series of instruments in writing, copies of which were attached to the complaint as exhibits and made a part thereof, Henry J. Lutter, during his lifetime, agreed to sell and the plaintiffs agreed to buy certain real property situated at Pomona, in the county of Los Angeles, for the sum of $6,750; that said sum was at that time a just, fair and adequate consideration for the land in question together with certain personal property included in the sale; that plaintiffs were at all times ready, able and willing to pay the agreed purchase price for the property and have demanded of the aforesaid executors a conveyance of said property, but that the latter refused to convey the property in question to plaintiffs or to perform said contract, whereas plaintiffs have performed all of the terms and conditions of said agreement enjoined upon them.

The letters which plaintiffs assert constitute a contract for the sale of real property commenced with a communication from plaintiff Prima M. O'Donnell under date of June 15, 1943, to Henry W. Lutter, wherein she made an inquiry regarding the purchase of certain property located on Fifth Avenue in Pomona adjacent to property owned by said plaintiff's sister, and in which communication she stated "and in case you still plan to sell it would like to hear from you with regard to price, etc." In answer to the foregoing, plaintiff Mrs. O'Donnell received from Henry J. Lutter under date of June 24, 1943, a communication wherein he stated:

"With regards to my Fifth Avenue property in Pomona, I am willing to sell same provided I get my price which is $7000.00, payment to be one half cash and the balance in the form of a first mortgage. The above price would include all fruit on the trees at the time of purchase, water stock and equipment on the premises."

Plaintiffs did not accept this offer but by letter dated July 3, 1943, requested an allowance or reduction on the purchase

price because of needed repairs on the house, and in this letter plaintiffs said:

"It would be our intentions to pay one-half down and if you plan to hold the 1st mortgage, rather than have us make out a loan here in Pomona, would like to know what your rate of interest would be."

To this counter proposal, Henry J. Lutter replied under date of July 10th by letter in which, after referring to his previous offer to sell, he wrote:

". . . since last writing you I have contacted my brother William and informs me that the house needed some repairs and that some allowance would be in order. In view of this information, I will make an allowance of $250.00 for the necessary repairs, same to be deducted from my offer of $7000.00.

"I have also recieved a notice from the orange association that there is due me monies, which will not be dispersed until the end of the season, this money is not included in the sale price, all other stocks and equipment is included in the above mentioned price."

In this letter, Mr. Lutter also gave plaintiffs the option of obtaining a loan and paying him in full or of having him take a purchase money mortgage for one-half the purchase price. This letter was signed for Henry J. Lutter by his brother, Elmer W. Lutter, and respondents assert that, as an agent for his brother, Elmer W. Lutter was without authority to bind his principal on a contract for the sale of real property, because such authorization was not in writing (Civ. Code, § 2309; Civ. Code, § 1624, subd. 4). However, we are convinced that by his subsequent letter of August 12, 1943, headed "Re: Sale of property 1379 Fifth Avenue Pomona, California, Prima O'Donnell, Purchaser," the principal, Henry J. Lutter, ratified the authority of his agent as exercised in the letter signed by such agent under date of July 10, 1943. Plaintiffs met the offer contained in the last communication with an unqualified acceptance under date of July 21st, when they wrote Henry J. Lutter in part as follows:

"The price of $6750.00 is satisfactory with us and *we will accept this offer.*" (Italics added.)

After advising Mr. Lutter that they had contacted the escrow department of the Bank of America in Pomona and that the bank would request of him the necessary papers for

the opening of an escrow, plaintiffs, with reference to the option given them regarding the payment for the property, wrote: ". . . we decided it would be more convenient to pay you off in full for the property. . . . ."

Under date of July 20th, the above mentioned bank wrote Henry J. Lutter, asking the latter to forward deed, policy of insurance, and other papers affecting the property, and also advising that it was the bank's understanding that the sale price was $6,750. Replying to the last mentioned communication, Henry J. Lutter, on August 12, 1943, in a letter captioned: "Re: Sale of property 1379 Fifth Avenue Pomona, California, Prima O'Donnell, Purchaser," forwarded to the bank the requested documents. Henry J. Lutter, however, died on September 18, 1943.

■ Respondents earnestly contend that the foregoing series of letters, which the complaint alleges was "the entire contract between the parties," was not intended as a contract, but was a mere negotiation looking toward a formal agreement to be submitted later for approval by the parties. Respondents urge that such contention is fortified because of the claimed indefiniteness of many of the terms contained in the letters and because no provision was therein made for care of the property, which was an orange grove; date of possession; prorating of taxes, insurance and rent; who would pay the title charges and escrow costs; and when the cash purchase price would be deposited in the escrow. These contentions on the part of respondents cannot be upheld. The requirements of a contract for the sale of real property have been definitely established and are that the memorandum of the agreement shall within itself show who is the seller and who is the buyer, what the price is and when it is to be paid, together with a description of the land so that it may be identified (*Breckinridge* v. *Crocker*, 78 Cal. 529, 534 [21 P. 179]). The case just cited is also authority for the statements that a contract of the kind with which we are here concerned need not be a formal contract drawn up with technical exactness, and that the memorandum of the agreement need not be found in one paper but may consist of a number of documents including telegrams or letters. It is only necessary that the memorandum contain all of the aforesaid material elements of the contract. In *Grafton* v. *Cummings*, 99 U. S. 100, 106 [25 L.Ed 366], the law upon this subject is thus declared:

"In an agreement of sale, there can be no contract without both a vendor and vendee. There can be no purchaser without a seller. There must be a sufficient description of the thing sold, and of the price to be paid for it. It is therefore an essential element of a contract in writing that it shall contain within itself a description of the thing sold by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it." Tested by the foregoing rules, we find in the foregoing letters:

THE SELLER: Henry J. Lutter in his letter of June 24, saying "I am willing to sell."

THE BUYERS: Prima M. O'Donnell and her husband, declaring in the letter from Mrs. O'Donnell, dated June 15th, 1943, "We will accept this offer."

THE PRICE: Henry J. Lutter, through his agent in the letter of July 10th, saying the price was $6,750 ($250 allowance "to be deducted from my offer of $7000.00.")

The letter of Prima M. O'Donnell dated July 21, saying "the price of $6,750.00 is satisfactory with us and we will accept this offer."

TIME AND MANNER OF PAYMENT: As to the time when and the manner in which the purchase price was to be paid, it seems clear to us from the postscript on the letter from Mrs. O'Donnell that the price was to be paid in cash through a thirty-day escrow, to which Henry J. Lutter agreed in his letter of August 13th complying with the request of the escrow bank dated July 20th that he send deed and other documents necessary to open the escrow.

DESCRIPTION OF PROPERTY TO BE SOLD: In his letter of June 24th, Henry J. Lutter, the seller, identified the property as "my Fifth Avenue property in Pomona." And the complaint alleged that the seller owned no other property on Fifth Avenue in Pomona. Moreover, the seller definitely described and identified the property in his letter of August 12th, wherein he said: "Re: Sale of Property 1379 Fifth Avenue, Pomona, California."

In support of their claim that the letters herein were only intended as preliminary negotiations looking toward the execution of a later formal contract which was never executed, respondents direct our attention first to the case of *Edgecomb* v. *Callahan*, 132 Cal.App. 248, 254 [22 P.2d 521], but that case is easily distinguished from the case at bar, because therein the letter relied upon to establish the contract clearly

stated that it was only "a preliminary outline to work from" and further stated that it "brings out the necessary high spots for you people to shoot at"; whereas in the instant case, Mr. Lutter's letters indicate that in his mind he had made a sale. Respondents also cite the cases of *Van Hoosen* v. *Briscoe*, 85 Cal.App. 746 [259 P. 1115]; *Dexter* v. *Ankiewicz*, 26 Cal.App.2d 326 [79 P.2d 400], and *Pacific Rolling Mill Co.* v. *Riverside & Arlington R. R. Co.,* 90 Cal. 627 [27 P. 525], but an examination of these cases shows that each of them involves and turns upon the proposition that it did not appear that either party intended to be bound until a formal written contract expressing all the terms of the agreement should be executed, or that there was not a meeting of the minds of the parties because they were merely negotiating as to the terms of an agreement to be entered into between them. Such is not the situation presented by the complaint herein. The allegations of the complaint and the exhibits made a part thereof, the truth of which must be assumed in passing upon a demurrer thereto, clearly indicate that the material terms of the contract of sale were agreed upon between the parties and nothing material to the validity of the contract was left to future settlement—nor does it appear in the case at bar that the parties intended or agreed that the contract between them should not be binding until evidenced by any other writing or agreement. The inference is also justified that the parties intended to be bound by the terms of their correspondence with each other insofar as the sale of the property in question was concerned, and that such correspondence embraced all the material terms of their agreement.

Respondents contend that the terms of the agreement are uncertain in that they do not provide for prorating taxes, insurance and rent. Equity, however, does not require that all of the terms and conditions of the proposed agreement be set forth in the contract. The usual and reasonable terms generally present in such contracts are, in contemplation of the parties, a part of such contract. In such a case custom steps in and it would be considered that as to the opening of an escrow, furnishing deeds, title insurance policies, prorating of taxes, insurance, rents, etc., the procedure would be as is customary in contracts of this kind (*Wagner* v. *Eustathiw,* 169 Cal. 663, 666 [147 P. 561]; *Janssen* v. *Davis*, 219 Cal. 783, 788 [29 P.2d 196].)

■ Respondents next urge that the purchase price set forth in the agreement between the parties was not the fair, adequate or reasonable value of the property. Specific performance cannot be enforced against a party "If he has not received an adequate consideration for the contract" (Civ. Code, § 3391) and the authorities are uniform in holding that the above requisite must be pleaded and proved before such relief can be awarded. The complaint filed herein alleges that the price agreed upon for the purchase of the property "was at said time a just, fair and adequate consideration for the land therein referred to, together with the personal property covered by said sale." While such allegations, as contended by respondents, do in a measure involve conclusions of the pleader and of law, they nevertheless also involve a statement of fact and are sufficient to withstand the effects of a general demurrer (*Ehrhart* v. *Mahony,* 43 Cal. App. 448, 450 [184 P. 1010]). In the case of *Prince* v. *Lamb,* 128 Cal. 120, 129 [60 P. 689], cited by respondents, an averment "that the price paid was a just and fair price, and the full value of the premises" was held sufficient. ■ It is also evident from the letters incorporated in the complaint that Henry J. Lutter and appellant Prima M. O'Donnell had for some time been very good friends, and such relationships may also be taken into account in determining the adequacy of consideration (*Wagner* v. *Eustathiw, supra,* at p. 664). Consideration may also be given to the fact that Mr. Lutter himself valued the property at the price fixed by him when offering it for sale to appellants (*Rischard* v. *Miller,* 182 Cal. 351, 354 [188 P. 50]). ■ Respondents emphasize the fact that by their complaint appellants allege that, while they claim a contract to buy the property for $6,750, the estate had received another offer of $10,000, by reason of which it is argued that the consideration of the agreement between Henry J. Lutter and appellants was inadequate and unfair. This argument is unsound because inadequacy of consideration which will militate against specific performance of a contract must be determined as of the date of the contract and not by subsequent events (*O'Connell* v. *Lampe,* 206 Cal. 282, 285 [274 P. 336]). The allegations of the complaint are sufficient to entitle appellants to an opportunity to prove the adequacy of consideration as of the date of the contract between them and the seller.

■ Respondents insist that since Henry J. Lutter died

prior to the commencement of this action, specific performance cannot be decreed against the executors of his estate unless they were lawfully authorized to convey the property (Civ. Code, § 3390, subd. 4). It is contended that the power and authority of an executor to convey real property or to fulfill a contract executed by the decedent is governed by sections 850 to 853 of the Probate Code and that, until proceedings are instituted pursuant to the cited sections, the executor is without power to execute a deed. We do not regard the aforesaid Probate Code sections as providing an exclusive remedy for securing specific enforcement of a contract made by a decedent, but rather as an alternative remedy intended "to save the expense and delay that would follow a separate action in equity for a specific performance" (*Estate of Garnier*, 147 Cal. 457, 459 [82 P. 68]) in cases where the legal representatives of the decedent's estate and the other parties to a contract are in accord that the agreement made by a decedent should be enforced. The Probate Code sections above referred to merely add to the law another method of procedure, but resort to the same is permissive rather than mandatory. We are impressed that the Probate Code sections are permissive and that resort may be had to them in cases "where the right of petitioner in the premises is free from doubt" (*Estate of Garnier, supra*). In adversary proceedings, such as the instant case, resort to equity procedure is both permissible and proper. (*Bewick* v. *Mecham*, 26 Cal.2d 10 [156 P.2d 757].) To us it appears doubtful whether the Legislature could constitutionally deprive a superior court of its inherent equity jurisdiction (Cal. Const., art. VI, § 5; *Hall* v. *Rice*, 64 Cal. 443 [1 P. 891, 2 P. 889]). ▇ Furthermore, the instant action was commenced not only against respondents herein but as well against the heirs and legatees of Henry J. Lutter, who were also joined as defendants. Notwithstanding this, by its judgment the trial court sought to dismiss the action in its entirety and as to all defendants named therein. It has long been held that where a vendor dies before conveyance, an action for specific performance may be maintained against his heirs and devisees (Pomeroy's Specific Performance of Contracts (3d ed.), § 494), and the same author is authority for the statement that where the purchase money remains unpaid, the personal representatives of the vendor are also necessary codefendants, and that they are always proper parties. The rule just

announced with reference to the maintenance of an action against the heirs and devisees of a deceased vendor would appear to be followed in California as is evidenced by section 3395 of the Civil Code.

Finally, respondents assert that appellants cannot maintain the action here under review because prior to the commencement of the same they failed to file a claim against the estate of Henry J. Lutter (Prob. Code, § 707). That appellants were not creditors or claimants within the meaning and effect of the Probate Code section just cited and that the filing of a claim against the estate of the decedent is not a prerequisite to the commencement of an action for specific performance was the unqualified holding in *Estate of Bailey*, 42 Cal.App.2d 509, 511 [109 P.2d 356]. Tested in the crucible of both reason and authority, we are persuaded that appellants' complaint stated a cause of action and that the general demurrer thereto should have been overruled.

For the foregoing reasons, the judgment is reversed and the cause remanded with directions to the court below to overrule the demurrer and to allow the defendants a reasonable time within which to answer should they be so advised.

Doran, J., concurred.

YORK, P. J.—I dissent. I agree with the trial judge in that portion of his decision which sustained the general demurrer, but I believe that the conclusions stated in the complaint show that possibly the plaintiffs may be able to state a cause of action, and that they should be entitled to amend their complaint, if they are so advised.

My dissent is based upon the belief that it is not fair to the defendants to be forced to trial on the complaint as it now stands. The complaint apparently asks for a personal judgment against the executors as individuals and not as executors, and although it is true that in the caption of the complaint defendants are named as executors and as individuals, the prayer of the complaint is as follows:

"3. That said defendants be adjudged to account and to pay to the plaintiffs damages they have sustained in the event said contract cannot be specifically performed, to-wit: the sum of $3250.00.

"4. For costs of suit.

"5. For such other and further relief as to the court may seem just and proper in the premises."

And the complaint does not ask for a judgment against the executors, as such, *to be paid in due course of administration.*

The actual facts as to any compliance with the terms of the contract are not fully stated. The complaint does not even state that any money was paid into the escrow, and the conclusion that the amount to be paid was equitable is offset by the direct allegation that the property is worth over $3,000 more than the amount to be paid under the contract. Just when this large increase in value over the contract price accrued is "left to the judicial knowledge of the court," is the explanation in appellants' brief.